**[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 279.]**

THE STATE OF OHIO, APPELLANT, *v.* CALHOUN, APPELLEE.

[Cite as *State v. Calhoun*, 1999-Ohio-102.]

*Appellate procedure—Review by trial court of petition for postconviction relief filed pursuant to R.C. 2953.21—Due deference to be given to affidavits sworn to under oath and filed in support of petition—Trial court not required to accept the affidavits presented as true statements of fact—Trial court properly denies petition for postconviction relief without holding an evidentiary hearing, when—Trial court properly denies petition for postconviction relief and issues proper findings of fact and conclusions of law, when.*

1.  In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact.

2.  Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.

3.  A trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence.

(No. 98-1627—Submitted April 20, 1999—Decided September 1, 1999.)

APPEAL from the Court of Appeals for Lake County, No. 97-L-063.

_____

**{¶ 1}** On August 23, 1989, the Lake County Grand Jury indicted Michael Calhoun, defendant-appellee, on counts of attempted aggravated murder (R.C. 2923.02), felonious assault (R.C. 2903.11), kidnapping (R.C. 2905.01), rape (R.C. 2907.02), aggravated robbery (R.C. 2911.01), aggravated burglary (R.C. 2911.11), and theft (R.C. 2913.02). Defendant's counsel and the prosecutor's office negotiated a plea agreement whereby defendant would plead guilty to attempted aggravated murder, rape, and aggravated burglary, and the prosecutor would request dismissal of the remaining charges.

**{¶ 2}** On August 2, 1990, the trial court informed defendant of his rights pursuant to Crim.R. 11(C)(2). Defendant entered an oral plea of guilty to the charges in the negotiated plea agreement. Further, defendant executed a written plea of guilty to those charges. On August 7, 1990, the trial court entered a *nolle prosequi* on the kidnapping, aggravated robbery, theft, and felonious assault counts. On September 4, 1990, the trial court sentenced defendant to an indefinite term of ten to twenty-five years on the attempted aggravated murder charge, ten to twenty-five years on the rape charge, and five to twenty-five years on the aggravated burglary charge. The court ordered that all sentences run consecutively.

**{¶ 3}** On November 29, 1993, defendant filed a *pro se* notice for postconviction relief requesting copies of his trial transcripts, and a motion for production of certain records and transcripts at the state's expense. On February 16, 1994, the trial court granted defendant's request for copies of transcripts and production of court records. As defendant did not raise any issues for consideration, the trial court did not make any rulings on the petition for postconviction relief itself.

**{¶ 4}** On September 23, 1996, defendant, represented by counsel, filed a petition to vacate conviction and set aside sentence (a postconviction relief petition)

pursuant to R.C. 2953.21. Defendant claimed that he did not knowingly, intelligently, and voluntarily waive his constitutional rights in entering his guilty plea. Defendant argued that his trial counsel coerced him into pleading guilty, and he claimed that counsel was also ineffective in failing to file a motion to withdraw defendant's guilty plea, upon his request, before sentencing. In support of his claims, defendant attached his own affidavit, the change of plea hearing transcript, and the sentencing hearing transcript.

{¶ 5} After the state responded to the petition with the affidavit of defendant's trial counsel, the defendant filed a motion to supplement his petition with an affidavit of his mother, Linda Calhoun, and the presentence report and psychiatric evaluation prepared for defendant's sentencing hearing. The trial court granted the request.

{¶ 6} On March 10, 1997, the trial court overruled defendant's petition without a hearing, finding that defendant had not set forth substantive grounds to warrant a hearing. On appeal, the Court of Appeals for Lake County reversed and remanded the cause for the trial court to hold an evidentiary hearing on the petition for postconviction relief and for the trial court to issue more specific findings of fact and conclusions of law. The court found that the issue of whether trial counsel had failed to file a motion to withdraw a guilty plea on defendant's behalf was unresolved.[1]

{¶ 7} The cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Charles E. Coulson*, Lake County Prosecuting Attorney, and *Julie Mitrovich King*, Assistant Prosecuting Attorney, for appellant.

—————————————

1. The court of appeals considered only the issue of whether it was ineffective assistance for counsel to refuse to withdraw defendant's guilty plea because defendant did not pursue the coercion theory on appeal.

*R. Paul LaPlante*, Lake County Public Defender, and *Vanessa R. MacKnight*, Assistant County Public Defender, for appellee.

_____

**LUNDBERG STRATTON, J.**

{¶ 8} We are called upon to answer three questions. First, must a trial court, when considering a postconviction relief petition, accept the affidavits presented as true? Second, did the trial court err in dismissing defendant's petition for postconviction relief on the allegation of ineffective assistance of counsel without holding an evidentiary hearing? Third, were the trial court's findings of fact and conclusions of law adequate to satisfy the requirements of R.C. 2953.21? For the reasons below, we answer the first two questions in the negative, the last question in the affirmative, and reverse the judgment of the court of appeals.

Ohio's Post-Conviction Remedy Act

{¶ 9} R.C. 2953.21, Ohio's Post-Conviction Remedy Act, was enacted in 1965 in response to the United States Supreme Court order that states must provide their prisoners with some "clearly defined method by which they may raise claims of denial of federal rights." *Young v. Ragen* (1949), 337 U.S. 235, 239, 69 S.Ct. 1073, 1074, 93 L.Ed. 1333, 1336.

{¶ 10} State collateral review itself is not a constitutional right. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76, citing *Murray v. Giarratano* (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1. Further, a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment. See *Steffen* at 410, 639 N.E.2d at 76, citing *State v. Crowder* (1991), 60 Ohio St.3d 151, 573 N.E.2d 652. Therefore, a petitioner receives no more rights than those granted by the statute.

{¶ 11} "It may be useful to note that cases of postconviction relief pose difficult problems for courts, petitioners, defense counsel and prosecuting attorneys alike. Cases long considered to be fully adjudicated are reopened, although

memories may be dim and proof difficult. The courts justifiably fear frivolous and interminable appeals from prisoners who have their freedom to gain and comparatively little to lose." *State v. Milanovich* (1975), 42 Ohio St.2d 46, 51, 71 O.O.2d 26, 29, 325 N.E.2d 540, 543.

{¶ 12} R.C. 2953.21 provides:

"(A)(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

" * * *

"(C) * * * *Before granting a hearing* on the petition filed under division (A) of this section, *the court shall determine whether there are substantive grounds for relief.* In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized record of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. *If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.*

"(D) Within ten days after the docketing of the petition, or within any further time that the court may affix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are made up, either party may move for summary judgment. The right to summary

judgment shall appear on the face of the record.

"(E) *Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues* even if a direct appeal of the case is pending." (Emphasis added.)

{¶ 13} According to the postconviction relief statute, a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing. *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169. Before granting an evidentiary hearing on the petition, the trial court shall determine *whether there are substantive grounds for relief* (R.C. 2953.21[C]), *i.e.*, whether there are grounds to believe that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." (Emphasis added.) R.C. 2953.21(A)(1).

{¶ 14} Postconviction relief is a remedy sought by a defendant who has either been tried and found guilty beyond a reasonable doubt, or who has pled guilty and has been convicted. In the interest of judicial economy and efficiency, we have held that it is not unreasonable to require the defendant to show in his petition for postconviction relief that such errors resulted in prejudice before a hearing is scheduled. See *State v. Jackson* (1980), 64 Ohio St.2d 107, 112, 18 O.O.3d 348, 351, 413 N.E.2d 819, 823. Therefore, before a hearing is granted, "the petitioner bears the initial burden to submit evidentiary documents containing *sufficient operative facts* to demonstrate the lack of competent counsel *and* that the *defense was prejudiced* by counsel's ineffectiveness." (Emphasis added.) *Id.* at syllabus.

Credibility of Supporting Affidavits

{¶ 15} In support of his assertions, defendant submitted his own affidavit with his postconviction relief petition. After the state responded to defendant's petition with an affidavit of petitioner's trial counsel, defendant was granted leave to supplement his petition with an affidavit of his mother, along with the presentence report and psychiatric evaluation prepared for defendant's sentencing hearing.

{¶ 16} The trial court, in reviewing defendant's claim that he did not knowingly, intelligently, and voluntarily waive his constitutional rights, reiterated the law regarding guilty pleas. In addition, the trial court reviewed the transcript of the plea hearing and concluded that defendant did not express to the court any misunderstandings he had regarding his rights or complain of any misleading information provided to him regarding his rights. Based on a review of the submitted documents and record, the trial court found that defendant's guilty plea was appropriately obtained and that it would be improper to vacate the plea. Accordingly, the trial court found the postconviction relief petition to be without merit and denied the petition without a hearing.

{¶ 17} The court of appeals reversed and remanded for an evidentiary hearing on defendant's petition. In reviewing the judgment of the trial court, the court of appeals assumed that when determining whether there are substantive grounds for relief under R.C. 2953.21, the affidavits presented in support of a petition are to be accepted as true. In addition, the court of appeals concluded that even if the affidavits of defendant, his mother, and his trial counsel contradicted each other, conflicts in the evidence should not be resolved without a hearing on the postconviction relief petition.

{¶ 18} We disagree with both conclusions and hold that in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the

petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact. To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended. "[I]f we would allow any open-ended allegation or conclusory statement concerning competency of counsel without a further showing of prejudice to the defendant to automatically mandate a hearing, division (D) of R.C. 2953.21 would be effectively negated and useless." *Jackson*, 64 Ohio St.2d at 112, 18 O.O.3d at 351, 413 N.E.2d at 823.

{¶ 19} Unlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea. The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice. See Civ.R. 1(B) and 1(C); *Cole,* 2 Ohio St.3d at 114, 2 OBR at 663, 443 N.E.2d at 171 ("[T]he allegations outside the record upon which appellant relies appear so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence"); *Sumner v. Mata* (1981), 449 U.S. 539, 545-546, 101 S.Ct. 764, 768-769, 66 L.Ed.2d 722, 730 (state appellate court factfinding based on a record review may be adequate to warrant a presumption of correctness in federal habeas corpus proceedings pursuant to former Section 2254[d], Title 28, U.S.Code).

{¶ 20} An affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be

deemed false. However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential. See, generally, *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

{¶ 21} In determining the credibility of supporting affidavits in postconviction relief proceedings, we adopt the reasoning of the First Appellate District in *State v. Moore* (1994), 99 Ohio App.3d 748, 651 N.E.2d 1319. The court, in *Moore*, cited *Sumner*, and suggested that a trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider all relevant factors. *Id.* at 754, 651 N.E.2d at 1323. Among those factors are (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. *Id.* at 754-756, 651 N.E.2d at 1323-1324.

{¶ 22} Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and

conclusions of law, in order that meaningful appellate review may occur.

{¶ 23} In his supporting affidavit, defendant averred the following:

"3) A D.N.A. test was done and it was alleged that there was a match of four genetic markers between my blood and a sample of semen taken from the crime scene.

" * * *

"7) I was informed by retained counsel that I would be convicted if I went to trial.

"8) I was informed by retained counsel that I would be sentenced to life in prison when convicted.

"9) I was informed by retained counsel that by pleading guilty to attempted aggravated murder, rape, and aggravated burglary I would be sentenced to a term of 5 to 25 years in prison with the sentence being either concurrent or consecutive.

"10) I was informed by retained counsel that by throwing myself to the mercy of the court, by my having no prior criminal record, and my being 18 years of age that I would most likely be sentenced to a concurrent term of 5 to 25 years in prison.

" * * *

"12) I was informed by retained counsel that with the 5 to 25 year sentence I would be eligible for parole in 2½ years, as compared to life in prison if I was convicted at trial.

" * * *

"14) After entering a plea of guilty I was informed by another inmate at the Lake County Jail that a first degree felony carries a minimum sentence of 5 to 10 years, meaning I could be sentenced to a cumulative prison term of 30 to 75 years. I was not informed of this by my attorneys.

"15) After I spoke with my mother about withdrawing my plea of guilty prior to sentencing, she called my attorneys to inform them that this is what I wanted

to do.

"16) During their conversation about withdrawing the plea of guilty prior to sentencing, my attorneys angrily refused, stating to my mother that if I (Michael Calhoun) wish to withdraw my plea of guilty that I should seek the services of a public defender because my attorneys would not fight for my case at a trial."

{¶ 24} Defendant's mother averred in her affidavit:

"3. At some point during the pendency of the case, Gary Zeid, Michael's attorney, strongly represented to Michael that he should enter into a plea agreement with the State of Ohio.

"4. Mr. Zeid represented that if Michael lost at trial he would spend the rest of his life in prison.

"5. Mr. Zeid further represented that since Michael lacked a prior criminal history he would 'most likely' receive a sentence of five (5) to twenty-five (25) years in prison.

"6. After Michael entered a change of plea, and long before Michael's sentencing, he immediately advised me that he wanted to withdraw his plea of guilty.

"7. I communicated Michael's request to withdraw his plea to Mr. Zeid.

"8. Mr. Zeid became angry and yelled at me, 'if Michael is going to fool around and withdraw his plea he can just get another attorney or public defender!'"

{¶ 25} We find that in assessing the credibility based on the above-mentioned factors, the trial court did not abuse its discretion in dismissing the credibility of these affidavits. The judge who reviewed defendant's postconviction relief petition was the same judge who presided at the change of plea hearing and the sentencing hearing. Thus, the trial judge was familiar with the underlying proceedings and was in the best position to observe the defendant and his attorney and therefore assess the credibility of the affidavits. See *Moore*, 99 Ohio App.3d

at 754, 651 N.E.2d at 1323, citing *Buxton v. Lynaugh* (C.A.5, 1989), 879 F.2d 140, 146. Further, defendant's supporting affidavits from himself and his mother are based on out-of-court statements allegedly made by defendant's trial counsel. Therefore, they contain and rely on hearsay. In addition, the affiants clearly are relatives of the petitioner or otherwise interested in the success of petitioner's efforts.

**{¶ 26}** Finally, in examining whether the affidavits contradict the record, we turn to defendant's plea hearing. The plea transcript reveals full compliance with Crim.R. 11.[2] Defendant assured the court that he understood English, was not under the influence of any drugs or alcohol, had not been pressured into pleading guilty, had not been made any promises as to what his sentence would be, and understood the rights he was giving up as well as the possible sentences that could be imposed. While defendant alleges in his affidavit that he first learned of the possible maximum sentence in jail, the plea transcript reveals that he was clearly informed of the potential sentence by the trial judge at the plea hearing before he pled guilty both orally and in writing.

**{¶ 27}** A review of Attorney Zeid's affidavit sheds light on why Attorney Zeid recommended that defendant plead guilty:

---

2. Crim.R. 11(C) provides:

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and doing all of the following:

"(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

"(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

"(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

"3. As indicated in Defendant's Memorandum in support of his Petition, this case was the first time DNA evidence was ever used in Lake County. We had retained experts in the field literally from New Jersey to California, and were unsuccessful in challenging the DNA results.

"4. In light of the DNA test results, as well as other physical evidence which the prosecution had connecting Defendant to the crime scene, it was Affiant's opinion that we would not be successful at the jury trial on the merits of the charges.

"5. Affiant did recommend to Michael Calhoun that he enter a plea of guilty to three counts of the indictment and the remaining four counts were dismissed pursuant to plea bargain discussions.

"6. Mr. Calhoun was then referred for a pre-sentence report by the Adult Probation Department, and for a psychiatric evaluation by the Lake County Psychiatric Clinic. The sentence imposed upon Michael Calhoun was not based solely upon plea bargaining negotiations, but was also based upon these presentence reports and evaluations.

"7. Prior to Michael Calhoun's change of plea, Affiant did discuss with him all of the potential penalties for all seven counts of the indictment. At no time did Affiant ever guarantee what the sentence would be. Affiant advised Mr. Calhoun that the sentence was in the sole prerogative of the Judge and that both the prosecution and Affiant would be making recommendations to the court as to what the sentence should be.

"8. Affiant did not coerce Michael Calhoun into pleading guilty. Affiant did, however, advise Michael Calhoun that it would be highly unlikely for us to win at trial and Affiant did recommend his entering a plead [*sic*] bargain, thereby having a better chance for leniency from the court."

{¶ 28} Defendant does not claim that Attorney Zeid "promised" him that he would be sentenced to five to twenty-five years. Even defendant's mother concedes that Attorney Zeid informed defendant that he would "most likely" be sentenced to

a concurrent term of five to twenty-five years. Thus, we cannot find that Attorney Zeid made any sort of guarantee to defendant.

{¶ 29} In addition, the sentencing record reveals the following undisputed statement of Attorney Zeid: "In reviewing the pre-sentence report, I think one of the more striking aspects of the report was the fact that Michael has denied his involvement in this activity here. The evidence of course has shown otherwise, especially with the DNA, which, of course, we learned in this Court was very strong evidence and of course is the basis of his pleading guilty to the charges and being in front of you today. * * * What I am requesting of this Court though is that it give a minimum sentence, five to 25 years on each of the counts and that they run concurrently and of course credit for time he has served." Interestingly, the trial judge then stated: "Thank you, Mr. Zeid. You have done everything you can on Mr. Calhoun's behalf. Certainly tested the system on the DNA suppression hearing which we had which was appropriate, of course."

{¶ 30} Defendant's supporting affidavits clearly have the effect of recanting prior statements defendant made on the record, both orally and in writing in his signed plea agreement, at the time he entered his plea in open court. There is nothing in the record to corroborate defendant's claims. This court has held that a record reflecting compliance with Crim.R. 11 has greater probative value than contradictory affidavits. See *State v. Kapper* (1983), 5 Ohio St.3d 36, 38, 5 OBR 94, 96, 448 N.E.2d 823, 825-826.

{¶ 31} We conclude that the trial court properly gave due deference to the affidavits filed in support of the petition, and in the sound exercise of discretion, properly weighed their credibility. We now examine whether there were substantive grounds for relief that would warrant an evidentiary hearing.

Substantive Grounds for Relief

{¶ 32} The United States Supreme Court has established a two-step process for evaluating an allegation of ineffective assistance of counsel:

14

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.

{¶ 33} In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

{¶ 34} On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; *State v. Jackson*, 64 Ohio St.2d at 110-111, 18 O.O.3d at 351, 413 N.E.2d at 822.

{¶ 35} We have held that "a petition for post-conviction relief is subject to dismissal without a hearing when the record, including the dialogue conducted between the court and the defendant pursuant to Crim.R. 11, indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary

documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises." *Kapper*, 5 Ohio St.3d at 38, 5 OBR at 96, 448 N.E.2d at 826.

**{¶ 36}** In this case, defendant originally claimed both that his plea was coerced by trial counsel, Attorney Zeid, and that counsel was ineffective in failing to file a motion to withdraw defendant's plea of guilty. Defendant did not pursue the coercion theory on appeal. Instead, he claims only that after he decided he wished to withdraw his plea and asked his mother to contact Attorney Zeid, Attorney Zeid essentially refused.

**{¶ 37}** The court of appeals compared this case to *State v. Strutton* (1988), 62 Ohio App.3d 248, 575 N.E.2d 466. However, as Judge Christley observed in her dissent below, *Strutton* is clearly distinguishable. Defendant Strutton alleged that his original trial counsel, upon being asked to file a motion to withdraw his guilty plea before sentencing "not only refused to do so, *but threatened to withdraw as counsel if Strutton should decide to file his own motion, without informing Strutton that Strutton would have the right to secure appointed counsel for trial.* If Strutton were to succeed in proving this allegation at a hearing it might well be supposed that, as Strutton alleges, he decided not to move to withdraw his plea only because he did not want to be put in the position of having to go to trial without an attorney to represent him." (Emphasis added.) *Id.,* 62 Ohio App.3d at 251, 575 N.E.2d at 468.

**{¶ 38}** Initially, we note that there may be credible reasons why a criminal defense attorney may decline to file a motion to withdraw a guilty plea and instead, suggest new counsel. For example, if the defendant has confessed guilt to his attorney and insists on taking the witness stand to falsely deny the crime, the Disciplinary Rules require the attorney to withdraw from the case. See DR 4-101(C)(3) and 2-110(B)(2).

**{¶ 39}** However, this does not jeopardize the defendant's rights because the

attorney may not withdraw until he or she has obtained leave of court and further taken reasonable steps to avoid foreseeable prejudice to his or her client, including giving due notice to his or her client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.  See DR 2-110(A)(1) and (2).

{¶ 40} Moreover, we agree with Judge Christley that both defendant's own affidavit and the affidavit of his mother concede that when Attorney Zeid allegedly threatened to withdraw from representing defendant and/or failed to file a motion to withdraw defendant's plea before sentencing, Attorney Zeid indicated that defendant could obtain a public defender to represent him if he wished to go to trial. Defendant does not allege, and the evidence does not demonstrate, that he thought that he would be required to proceed to trial without an attorney if his motion were filed and his original counsel withdrew.

{¶ 41} Defendant entered his plea of guilty on August 2, 1990 and was sentenced on September 4, 1990.  Defendant had over a month to file his own motion to withdraw his plea.  Defendant did not attempt to file a *pro se* motion.  He did not seek a public defender.  He did not attempt to retain new counsel.  He did not even mention his desire to withdraw his plea at sentencing.   Indeed, the sentencing transcript reveals no hesitation.

{¶ 42} On these facts, we cannot find that defendant was prejudiced by his attorney's alleged failure to file a motion to withdraw his guilty plea.  Therefore, we hold that pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.

Findings of Fact/Conclusions of Law

**{¶ 43}** "If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal." R.C. 2953.21(C). The court of appeals found that the trial court did not make sufficient findings of fact and conclusions of law because the trial court did not address *every* argument raised by petitioner and allegedly supported by documentary evidence.

**{¶ 44}** This court echoed the language of the statute in *State v. Lester* (1975), 41 Ohio St.2d 51, 70 O.O.2d 150, 322 N.E.2d 656, paragraph two of the syllabus, where we held that findings of fact and conclusions of law are mandatory under R.C. 2953.21 if the trial court dismisses the petition. " 'The obvious reasons for requiring findings are " * * * to apprise petitioner of the grounds for the judgment of the trial court and to enable the appellate courts to properly determine appeals in such a cause." *Jones v. State* (1966), 8 Ohio St.2d 21, 22 [37 O.O.2d 357, 358, 222 N.E.2d 313, 314]. The exercise of findings and conclusions are essential in order to prosecute an appeal. Without them, a petitioner knows no more than [that] he lost and hence is effectively precluded from making a reasoned appeal. In addition, the failure of a trial judge to make the requisite findings prevents any meaningful judicial review, for it is the findings and the conclusions which an appellate court reviews for error.' " *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 530 N.E.2d 1330, 1330-1331, quoting *State v. Mapson* (1982), 1 Ohio St.3d 217, 219, 1 OBR 240, 242, 438 N.E.2d 910, 912.

**{¶ 45}** A trial court need not discuss every issue raised by appellant or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law. The findings need only be sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion. *State v. Clemmons* (1989), 58 Ohio App.3d 45, 46, 568 N.E.2d 705, 706-707, citing 5A Moore, Federal Practice (2 Ed.1990) 52-142, Section 52.06[1].

**{¶ 46}** Thus, we hold that a trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of

fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence.

{¶ 47} In a three-page opinion, the trial court below outlined the procedural history, set forth the appropriate legal standards, and addressed defendant's claims. Having sufficiently reviewed the petition and supporting documents, the trial court concluded that defendant's guilty plea was appropriately obtained and it would be improper to vacate the plea. Thus, the court found that the petition did not set forth substantive grounds for relief. The trial court's findings of fact and conclusions of law were adequate in conveying to the court of appeals the basis for its decision. Accordingly, we find that the court of appeals erred in reversing the present case and ordering the trial court to issue more specific findings of fact and conclusions of law.

Conclusion

{¶ 48} Postconviction relief serves an invaluable function in the criminal justice system. With this decision we simply affirm the trial court's discretion to judge the credibility of the petitions in order to discard frivolous claims. We continue to urge the trial courts to remain vigilant in carefully reviewing each petition for postconviction relief to ensure that meritorious constitutional claims are effectively addressed.

{¶ 49} Accordingly, we find that the trial court properly weighed the credibility of the affidavits, properly found that defendant had not set forth sufficient operative facts to warrant a hearing, and properly issued sufficient findings of fact and conclusions of law. Therefore, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER and COOK, JJ., concur in judgment.

_____