DECISION AND JUDGMENT ENTRY
This is an appeal from a decision of the Lucas County Court of Common Pleas to deny a petition for postconviction relief filed by John Noser and to grant summary judgment to the state of Ohio. Because we find that the trial court did not abuse its discretion when it dismissed the petition for postconviction relief and did not deprive Noser of due process of law when it ruled on the motion for summary judgment without first holding an evidentiary hearing, we affirm the ruling of the trial court.
The record shows that Noser was tried for one count of murder in the Lucas County Court of Common Pleas. The victim of the murder was Noser's former girlfriend who was last seen with Noser at an ATM machine on August 15, 1995. The victim was never seen again after that transaction was video recorded, and her body has never been found.
Two days after the victim was last seen, police in Middletown, Ohio discovered Noser camping in the area. He had the victim's car and her possessions with him. He said the victim had been killed in a drug deal that went awry in Toledo, Ohio.
Extensive efforts were made to investigate his story of a drug deal shoot-out, but Noser himself could not lead the police to a location in Toledo that matched his description of where the events took place, no reports were made to the police regarding a shooting during the time in question, and the local DEA agents were able to verify that none of them had been involved in a shoot-out in Toledo. Nevertheless, Noser continued to assert as his defense at trial that he did not kill his former girlfriend, she was killed in a shoot-out in Toledo over a drug deal.
After considering all of the evidence, a jury convicted Noser of murder. The trial court sentenced Noser to fifteen years to life for his crime. He filed a direct appeal, State v. Noser (Dec. 7, 2001), L-0-1154, unreported, which resulted in this court affirming the trial court. Id. While the direct appeal was pending, Noser filed his petition for postconviction relief in the trial court. He argued that he was denied due process in his trial because the state failed to reveal exculpatory information to him. Specifically, he said that the state was aware of a witness who would testify that he recalled an evening he spent with Noser and Noser's ex-girlfriend having a cook-out, during which the conversation turned to making money by running drugs. The witness told investigators from various police departments and from the prosecutor's office that Noser's ex-girlfriend said she would be willing to work for a drug dealer if she could earn $2,000. Noser said that even though his trial counsel made a request for full discovery, the prosecutor failed to reveal the information recounted above to his trial counsel.
In support of his petition for postconviction relief, Noser filed an affidavit from the witness which said, in pertinent part:
 "Shortly before Brenda disappeared in 1995, Brenda, John and I spent an evening cooking out. We grilled chicken and drank beer. Someone stated that they could make $2,000.00 (two thousand dollars) dealing drugs. When I stated `not me,' Brenda stated that she would seriously consider running drugs for $2,000.00."
Noser also filed an affidavit from his trial attorney in which his attorney averred that he would have presented the above information in defense of Noser at trial if he had known of the information.
In response to the petition for postconviction relief, the state sought summary judgment. The state argued that the petition was without merit for four reasons. First, the state argued that res judicata applied to bar the presentation of the argument raised by Noser in his petition for postconviction relief. The state said that since Noser was also present when his ex-girlfriend allegedly told the witness that she would seriously consider dealing drugs to make $2,000, Noser knew about the statement himself, and he should have told his trial counsel and sought a continuance in order to subpena the witness on his behalf.
Second, the state argued that since Noser knew about the statements himself, the state had no obligation to reveal the information to him or to his trial counsel. The state said the facts in this case would not support an assertion that the state failed to reveal information known only to it that would be exculpatory to the accused.
Third, the state said that the statements of the ex-girlfriend were inadmissible hearsay. The state said that no exception to the hearsay rule would apply, so the girlfriend's statements could not have been repeated to the jury in any event.
Finally, the state argued that Noser failed to show that the outcome of his trial would have been different if the statements were disclosed to Noser's trial counsel. The state said Noser could not show any prejudice to his case caused by the nondisclosure of the statements.
The state urged the trial court to judge the credibility of the affiants and to conclude that there were no material issues of fact in dispute. The state provided the affidavits of a police officer who interviewed the witness during the investigation of the crime and of an investigator from the prosecutor's office who interviewed the witness after Noser filed his petition for postconviction relief. The police officer averred in part:
 "4. That during my interview of Gary Swesey, he told me that he, Swesey, was present at and participated in a conversation with John Noser and Brenda Borowski wherein Brenda Borowski told John Noser that she would be willing to carry drugs for money.
 "5. Swesey also told me that they were all drinking and that he did not take any of this talk seriously as he never knew of any drug involvement on Brenda Borowski's part.
 "6. That while I wrote Swesey's statements in my notes (see attached two pages) I did not reference these statements of Swesey in any of my typed, written reports."
The officer also averred that he had not told the prosecutors about the statements of the witness.
The investigator from the prosecutor's office averred that he interviewed the witness after Noser filed a petition for postconviction relief. Attached to his affidavit was a transcript of his interview with the witness identified in Noser's petition. The transcript shows that Noser's uncle contacted the witness after Noser's trial, allegedly as part of research for a book the uncle was writing about Noser's case. During the interview with the uncle, the witness relayed the information about the cook-out conversation with Noser and Noser's ex-girlfriend. The investigator then asked the witness to recall how the conversation went when the ex-girlfriend made the statement at issue. The following discussion ensued:
 "A. I don't remember how that subject even came up but Brenda and John, when John, John didn't say much about it, Brenda had said that as far as it goes with running some drugs, in fact it was supposed to been Cocaine, I believe, um that she would consider doing at least once, or something of that sort. And that's when I stepped in right away and said `not me,' I don't, your either going to end up dead or in jail.
"Q. Okay and did she agree with that or?
 "A. She didn't agree with it or anything like that, but as far as the rest of the conversation goes I can't remember anything else about it.
 "Q. Okay and you said it was kind of like a, almost like a pipe dream, she's spouting this off like a, it'd be a nice way to make money, it'd be a nice way to make money by hitting the lotto or something like that, kind of day dreaming.
"A. Yeah.
"Q. Characterize it as that?
"A. I took it as just alcohol talking.
 "Q. And have you ever known her seriously to run drugs or anything like that?
"A. Never.
"Q. And would you ever suspect her of doing that?
"A. No.
"* * *
 "Q. Okay, do you think she would sacrifice her relationship with her family and that for something like running drugs where you could end up dead or in jail?
"A. I doubt it very seriously.
"* * *
 "Q. It was just you, John and Brenda talking when you guys were drinking that day and that conversation come up about running some drugs?
"A. Yeah.
 "Q. (Unknown): You guys were at Brenda's trailer, and this conversation, you sure nobody else was there?
"A. Not that I can recall.
 "Q. What were you doing during the day, what was going on?
 "A. Well Brenda was going in and out, John, I can't even recall what he was doing, I know he was doing something."
The interview ended with the witness saying that he gave no credence at all to the ex-girlfriend's statement that she would seriously consider running drugs.
Twenty-one days after the state filed its motion for summary judgment, the trial court ruled on the motion. The trial court provided findings of fact and conclusions of law. The trial court said that since the ex-girlfriend's statement was made in Noser's presence, res judicata
applies to prevent Noser from raising this issue now, since he could have raised it at trial through counsel and could have asked for a continuance to find the witness. The trial court also ruled that the state had no obligation to tell Noser or his counsel about the statements because Noser already knew about them. The trial court then denied Noser's petition for postconviction relief and granted summary judgment to the state.
After the trial court entered its ruling, Noser filed a request for an extension of time to respond to the state's motion for summary judgment. The trial court denied the request on the basis that the motion for summary judgment was already decided before the request for an extension of time was made. Noser then filed this appeal.
Noser presents two assignments of error for consideration. The two assignments of error are:
"FIRST ASSIGNMENT OF ERROR
 The trial court committed prejudicial error by dismissing Appellant's Petition to Vacate and Set Aside Judgment (Judgment Entry, April 12, 2001, Petition to Vacate and Set Aside Judgment, State of Ohio's Motion for Summary Judgment).
 "SECOND ASSIGNMENT OF ERROR
 The trial court committed prejudicial error by failing to conduct an evidentiary hearing on the appellant's Petition to Vacate and Set Aside Judgment. The trial court's error deprived the appellant of his constitutional right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. (Judgment Entry, April 12, 2001, Petition to Vacate and Set Aside Judgment, State of Ohio's Motion for Summary Judgment)."
In support of his first assignment of error, Noser argues that the trial court could not dismiss his petition for postconviction relief without a hearing because he presented substantive grounds for relief that were supported by the record and evidence outside the record. He argues that the state failed to meet its obligation, under Brady v.Maryland (1963), 373 U.S. 83, to provide exculpatory evidence to him and to his trial counsel before trial. He argues here, as he did in his petition in the trial court, that the testimony of the witness who recounted hearing Noser's ex-girlfriend say that she would seriously consider dealing in drugs to earn $2,000 was exculpatory.
In addition, he asserts on appeal an argument that he never presented to the trial court that even though the police officer and the investigator assumed that Noser was present when the ex-girlfriend made the statement, Noser was in fact not present and was unaware his girlfriend made the statement. He goes on to construe one statement from the transcript of the interview of the witness conducted by the investigator from the prosecutor's office to support his assertion that he was not present when the statements were made. The statement to which he points relates to what the witness, Noser and Noser's then girlfriend were doing the day the conversation took place. The witness answered that Noser's girlfriend was going in and out of the trailer, and he could not remember exactly what Noser was doing. Noser says that since the witness could not remember what Noser was doing that day, it is plausible that he was outside, going to the bathroom, getting more beer or preparing other food items when his then girlfriend made her remarks to the witness. He says this dispute over whether or not he was present can only be resolved by holding a hearing and taking testimony outside the record.
First, we note that the last argument recounted was never presented to the trial court because Noser did not file any opposition to the state's motion for summary judgment. Nor was the argument implied in Noser's petition, as he now asserts on appeal. The only affidavit presented in support of Noser's petition for postconviction relief was the affidavit of his trial counsel, who averred that he did not know of the witness who would recount a statement from Noser's girlfriend that she would seriously consider dealing drugs if she could earn $2,000. This information does not contain any averment from Noser that he was not aware of the statement.
We will not consider any argument presented for the first time on appeal that could have been raised in the trial court. SeeGottfried-Smith v. Gottfried (1997), 119 Ohio App.3d 646. Second, we note that even if the argument could be considered for the first time on appeal, it is not persuasive. Noser's argument relies upon taking one statement about what the witness, Noser's girlfriend and Noser were doing during the entire day that a conversation occurred out of context to apply it to when the conversation in question took place. When the transcript is read as a whole, it is clear that the witness did indicate to the investigator that the witness, Noser and Noser's girlfriend were all present when Noser's girlfriend made the statement that she would seriously consider dealing drugs to earn $2,000.
We find the trial court did not err when it reasoned that res judicata
was applicable to bar Noser from raising an issue in a petition for postconviction relief about a statement he knew about himself and could have raised at trial through counsel. Noser's first assignment of error is not well-taken.
In support of his second assignment of error, Noser argues that the trial court erred when it ruled upon his petition for postconviction relief without first holding an evidentiary hearing. Noser says again that different interpretations can be made of the witness's testimony regarding whether or not Noser was present when Noser's then girlfriend made the statement in question to the witness. Noser argues that the "factual dispute" can only be resolved by considering conflicting testimony at an evidentiary hearing.
As we have already noted in our discussion of the first assignment of error, Noser never presented the trial court with any argument that he was not personally present when his then girlfriend made the statement in question to the witness. For that reason alone, the trial court had no obligation to hold an evidentiary hearing because no "factual conflict" was presented to the trial court. The state presented the trial court with the argument that Noser was present when the statements were made and presented the transcript of the witness's testimony which the trial court was free to evaluate to determine whether the assertion of the state was supported by the evidence. State v. Calhoun (1999),86 Ohio St.3d 279, 284-285. The trial court committed no error in its assessment of the evidence and argument before it or in its decision that no evidentiary hearing was required in this case. Noser's second assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Noser is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.