JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Eileen A. Gallagher that denied Joe C. Lawston's pro se, post-sentence motion to withdraw his guilty plea. He claims manifest injustice requires withdrawal of the plea because he did not understand the proceedings and his lawyer failed to properly advise him. We affirm.
 {¶ 2} On December 8, 1999, then sixty-six-year-old Lawston was arrested for the shooting death of Stanley Dyer. The record indicates that he made an oral statement to police in which he claimed that Dyer had borrowed money from him and, when he asked for its return, Dyer "started raising hell in his house, cussing and carrying on, so he grabbed a shotgun and shot him." Lawston also claimed that, when he fired the gun, Dyer was unarmed and was not coming at him.
 {¶ 3} On February 29, 2000, Lawston entered a guilty plea to a charge of murder[1] and, in return, the State dismissed firearm specifications[2] attached to the charge and he was sentenced to the mandatory prison term of fifteen years to life.[3] He did not appeal but instead moved pro se for the appointment of a lawyer and a transcript of proceedings at State expense to assist him in filing a petition for postconviction relief. About a year after these motions were denied, he filed a Crim.R. 32.1 motion to withdraw his guilty plea, claiming that his lawyer failed to properly advise him of his defenses and that he did not have sufficient understanding to enter a voluntary plea. The motion was denied without opinion and Lawston states two assignments of error:
 {¶ 4} "I. The trial court prejudicially erred in failing to conduct an evidentiary hearing on appellant's motion to withdraw his guilty plea."
 {¶ 5} "II. The trial court abused its discretion when it denied appellant's motion to withdraw his guilty plea pursuant to Crim.R. 32.1."
 {¶ 6} A post-sentence motion to withdraw a guilty plea under Crim.R. 32.1 must be supported by evidence showing manifest injustice, and we review the judge's ruling for abuse of discretion.[4] The decision to hold a hearing on a post-sentence motion is also within the judge's discretion,[5] and a hearing is not required if the facts alleged by the defendant and taken as true by the judge would not merit relief even if proven.[6] This does not mean that the judge is required to accept all of the defendant's allegations as true because a judge has authority to assess the credibility of affidavits before granting a hearing on a postconviction motion,[7] and need not hold one where the circumstances show that the facts alleged in the affidavit cannot be proven.[8]
 {¶ 7} At the plea hearing, the judge inquired into Lawston's understanding of the proceedings, and he indicated that he did not understand everything that was said and was having trouble hearing. The judge then ascertained that Lawston could hear her, and repeated the substance of the proposed plea agreement:
 {¶ 8} "THE COURT: What the prosecutor said, sir, was that you were going to plead guilty to the underlying charge of Murder, and the State was going to remove the specifications from the indictment that carry with it a potential penalty of one year, and a potential penalty of three years * * *.
 {¶ 9} "Now, the charge to which you are going to plead guilty to is Murder, which is punishable by 15 years to life in prison. There is no chance that you will be given probation, based upon the crime to which you will be pleading guilty to, okay?
 {¶ 10} "Do you understand all that?
 {¶ 11} "MR. LAWSTON: Yeah; I think so."
 {¶ 12} The judge then learned that Lawston had only a fourth grade education and was essentially illiterate, and questioned him further:
 {¶ 13} "THE COURT: Did anybody ask you to read anything since the time you have been arrested?
 {¶ 14} "MR. LAWSTON: No, Ma'am.
 {¶ 15} "THE COURT: Or did anyone ask you to sign anything since the time you have been arrested that you didn't understand?
 {¶ 16} "MR. LAWSTON: No, Ma'am."
 {¶ 17} Lawston also indicated that he was on medication "for the heart trouble, high blood, and sugar." He told the judge that the medication sometimes made him feel faint, but denied having such feelings at the hearing, and stated:
 {¶ 18} "MR. LAWSTON: * * *. When I start feeling dizzy, I catch myself. I sit down and keep from falling out.
 {¶ 19} "THE COURT: But you are understanding everything we're doing here today, right?
 {¶ 20} "MR. LAWSTON: I think so, Ma'am.
 {¶ 21} "Yes, Ma'am."
 {¶ 22} The Crim.R. 32.1 motion included an affidavit in which Lawston alleged that Dyer had threatened him when he asked for the money, and that:
 {¶ 23} "Mr. Dyer suddenly stood up, and while cursing and threatening to do physical harm to me reached towards his back pocket.
 {¶ 24} "* * * I had a shotgun close by the chair I was sitting in, and when Mr. Dyer abruptly stood up and threatened me while reaching in his pocket I grabbed the shotgun and fired a single shot striking Mr. Dyer in the face."
 {¶ 25} Lawston claimed that he told his lawyer of Dyer's actions, but that on the day of trial his lawyer "told me for the first time that he couldn't defend me on the charge of murder and that I would have to plead guilty in order to get a reduction in the time I would have to serve."
 {¶ 26} Lawston claims that the transcript of his plea hearing shows his inability to understand the proceedings and that the allegations in his affidavit, if true, show that his lawyer failed to properly advise him concerning his plea, particularly claiming that he would have gone to trial if told of the possibility of obtaining a conviction to the charge of voluntary manslaughter instead of murder. He claims that the three-year reduction[9] in his minimum prison term, from eighteen years to fifteen years, was insufficient motivation for a man of his advanced years to agree to plead guilty and, therefore, that his plea was involuntary.
 {¶ 27} Although the judge might have taken further precautions when questioning Lawston about his understanding, such as inquiring into the facts of the shooting to ensure that he did not harbor reservations concerning his plea, her inquiry was adequate under the abuse of discretion and manifest injustice standards employed here. A defendant's lack of education is a factor affecting his ability to make a valid guilty plea, but other factors can show "that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."[10] So long as the judge takes adequate steps to make the proceedings "reasonably intelligible" to the defendant,[11] his lack of education will not vitiate the plea. Furthermore, although Lawston now claims that his medication interfered with his understanding, the judge specifically inquired about its effect and he denied having any dizziness or feeling faint at the time.
 {¶ 28} We also find that Lawston's affidavit is insufficient to establish an abuse of discretion in denying either the Crim.R. 32.1 motion or a hearing. The facts alleged in the affidavit contradicted his oral statement to the police, in which he stated that Dyer was neither armed nor attempting to attack him. Moreover, he made no statements about Dyer's conduct during the plea proceeding or prior to his sentencing, nor did he make any complaint to the judge about his lawyer's conduct, even when directly asked. One could reasonably question the credibility of Lawston's affidavit raising his claims for the first time over a year after his conviction and sentencing. The basic concept of self-defense is fundamental and should be articulable by most defendants regardless of their education.
 {¶ 29} Although Lawston requested assistance in moving for postconviction relief in April 2000, that motion stated only that "I am innocent," and "I did not commit this crime," and failed to raise any of the issues alleged in his Crim.R. 32.1 affidavit. The judge could consider the delay, as well as the conflict with the police statement, in assessing the credibility of the affiant and the need for a hearing.[12]
We cannot find that the judge abused her discretion in ruling that the plea transcript and Lawston's affidavit failed to establish manifest injustice under Crim.R. 32.1. The assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., AND TERRENCE O'DONNELL, J., CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] R.C. 2903.02.
[2] R.C. 2941.141, 2941.145.
[3] R.C. 2929.02(B).
[4] State v. Smith (1977), 49 Ohio St.2d 261, 3 O.O.3d 402,361 N.E.2d 1324, paragraphs one and two of the syllabus.
[5] State v. Legree (1988), 61 Ohio App.3d 568, 574, 573 N.E.2d 687.
[6] Id. (Citation omitted.)
[7] State v. Calhoun, 86 Ohio St.3d 279, 284-285, 1999-Ohio-102,714 N.E.2d 905.
[8] Id.
[9] The judge was allowed to impose sentence for only one of the firearm specifications. R.C. 2929.14(D)(1).
[10] State v. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.
[11] State v. Ballard (1981), 66 Ohio St.2d 473, 480, 20 O.O.3d 397, 423 N.E.2d 115.
[12] Smith; Calhoun.