OPINION
{¶ 1} The appellant, Jaylon Smith, appeals the July 16, 2004 judgment of the Common Pleas Court of Allen County, Ohio dismissing Smith's petition for post-conviction relief without an evidentiary hearing.
 {¶ 2} The facts relevant to this appeal are as follows. On Friday, November 15, 2002 police responded to a phone call from a female victim. The victim reported that a man had approached her from behind as she was walking to her 1999 Jeep Cherokee, which was parked at the rear of an office building at 1062 West Market Street in Lima, Ohio. The man pointed a handgun at her, demanded money, and then forced her to get into the vehicle and drive from that location. He then took over driving the vehicle, and drove to a vacant residence, where he ordered her to undress and get into the back seat. He then raped her vaginally and anally. Afterwards, he told her to get dressed and ordered her out of the vehicle. He then stole the vehicle, and the victim went to a neighboring residence and called the police.
 {¶ 3} Officers from the Lima Police Department located the vehicle approximately forty-five minutes later, and engaged in a short pursuit. The defendant, Jaylon Smith, jumped from the vehicle and attempted to flee, but was apprehended by the police. The victim thereafter identified him as the man who had robbed, kidnapped, and raped her at gunpoint. DNA tests performed on the sample obtained in the rape kit resulted in a match with a known sample of Smith's DNA — the statistical probability of someone else having this same DNA profile is 1 in 343,600,000,000,000.
 {¶ 4} On January 16, 2003 Smith was indicted for two counts of rape, one count of kidnapping, one count of aggravated robbery, one count of failure to comply with an order or signal of a police officer, and one count of grand theft of a motor vehicle. The rape, kidnapping and aggravated robbery charges also contained firearm specifications.[1]
 {¶ 5} On September 9, 2003, the morning trial was set to begin, Smith negotiated a guilty plea to one count of rape with a firearm specification, one count of kidnapping, and one count of aggravated robbery. He later filed a motion to withdraw his guilty plea, which the trial court denied after a hearing on November 17, 2003. At that hearing, the trial court imposed a cumulative sentence of twenty-two years in prison. Smith appealed to this Court to no avail; his convictions and sentences were affirmed on August 2, 2004. See State v. Smith, 3rd Dist. No. 1-04-06, 2004-Ohio-4004.
 {¶ 6} On June 15, 2004 Smith filed a petition for post-conviction relief, asserting claims of ineffective assistance of counsel and actual innocence. The trial court filed a judgment entry on June 16, 2004 denying the petition without a hearing. Smith subsequently appealed, asserting one assignment of error:
The trial court below committed error prejudicial to theDefendant in overruling and denying his Petition forPost-Conviction Relief.
 {¶ 7} Our review of this issue begins by noting that this Court has previously determined that "[p]ostconviction petitions are special civil actions governed exclusively by statute."State v. Spirko (1998), 127 Ohio App.3d 421, 429. "Therefore, a petitioner receives no more rights than those granted by the statute." State v. Calhoun (1999), 86 Ohio St.3d 279, 281.
 {¶ 8} Ohio Revised Code 2953.21(A)(1) allows "[a]ny person who has been convicted of a criminal offense . . . and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" to file a petition for post conviction relief. This section further provides that "[b]efore granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief." R.C.2953.21(C).
 {¶ 9} In determining whether there are substantive grounds for relief to warrant a hearing,
[T]he court shall consider, in addition to the petition, thesupporting affidavits, and the documentary evidence, all thefiles and records pertaining to the proceedings against thepetitioner, including, but not limited to, the indictment, thecourt's journal entries, the journalized records of the clerk ofcourt, and the court reporter's transcript.
R.C. 2953.21(C). If the court determines that there are no substantive grounds for relief, it may dismiss the petition without an evidentiary hearing. See Calhoun,86 Ohio St.3d at 282 — 83, State v. Cole (1982), 2 Ohio St.2d 112, State v.Jackson (1980), 64 Ohio St.3d 107, 112.
 {¶ 10} In reviewing the documentary evidence in support of the petition, the trial court "may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." Calhoun,86 Ohio St.3d at 284. The Ohio Supreme Court has further stated that "[u]nlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." Id. In examining the credibility of the affidavit testimony, all relevant factors are to be considered, including whether the affidavits contradict evidence in the record. Id.
 I {¶ 11} In the case sub judice, Smith asserts a claim of actual innocence in his petition for post conviction relief. In support of his claim, he submits his "Statement of Facts," which presents an entirely different picture of events surrounding this incident. He further alleges that two individuals, Laron Johnson and Will Knight are willing to submit affidavits supporting his version of the incident, although these affidavits were not filed. Thus, the sole evidentiary material before the trial court that supports Smith's petition for postconviction relief is contained in Smith's "Statement of Facts."
 {¶ 12} Smith claims that he was "hanging around" outside of a local convenience store when his accuser pulled into the parking lot in her 1999 Jeep Cherokee. He alleges that she rolled down her window and asked him for directions to an area of town "filled with drug addicts." He asked her whether she was looking for drugs, and she replied that she was not, but instead was looking for a male prostitute. He claims that she then offered $250.00 for him to have sex with her, which he accepted. He entered the vehicle at her invitation, and they drove off, stopping at what appeared to be a vacant residence. There they engaged in consensual intercourse in the back of the Jeep. He then alleges that she volunteered her vehicle so that he could drive somewhere to "get cleaned up," and that she would wait outside the residence. She also gave him $5.00 to put gas in the car.
 {¶ 13} Thereafter, he drove to a friend's house to wash up, and then took his friends to the gas station with him where they bought "beer and snacks." After taking his friends back home, he realized they had left some of the beer they purchased in the Jeep and he had to return to their apartment to give it to them. This apparently took about forty minutes in all.
 {¶ 14} On his way to return the beer before returning the vehicle, he noticed a police cruiser turning onto the street behind him with its lights on. He turned onto the next street, and the cruiser followed him. He says that he then stopped the vehicle and got out, saying that he was "nervous and afraid because [he] had no license plus the beer in the vehicle." Then, he claims that he cut through someone's yard to go back towards his friend's house, and that is when the police stopped him and took him into custody.
 {¶ 15} As previously stated, the trial court was permitted to judge the credibility of appellant's affidavit to determine "whether to accept the affidavits as true statements of fact."Calhoun, 86 Ohio St.3d at 284. In determining the credibility of the affidavit, all relevant factors should be considered. Id. at 284-85. Among other considerations, these factors include whether the affiant is interested in the petitioner's success, and whether the facts presented by the affiant contradict evidence in the record. Id.
 {¶ 16} In the instant case, the facts as related by the appellant completely contradict the story presented in the lower court. The record makes clear that the facts presented at the outset of this opinion were the facts the prosecution would attempt to prove at trial. Smith was made aware of the prosecution's case prior to the onset of trial, and was aware of the nature of the prosecution's case when he pled guilty to charges of rape and kidnapping.
 {¶ 17} Moreover, Smith's responses in his pre-sentence interviews are telling. In the sex offender classification evaluation, Smith told the interviewer that he decided to rob somebody because he needed money to travel down to Cincinnati, and that he walked up to a lady who was getting into her truck in order to rob her. He then stated that in the process of robbing her, "a crazy thought came to [his] mind," and he ordered her to take her clothes off so that he could have sex with her. He then revealed that he had committed a similar act a few weeks prior in Cincinnati. Smith also told police during his presentence interview that "[if] I didn't get caught I would have the mentality to keep doing it, and there would have been more [victims]."
 {¶ 18} In sum, all the trial court had to rely on was Smith's own selfserving "State of Facts" — an affidavit which completely contradicts his previous statements. Under these circumstances, we find that the trial court acted within its discretion in ruling that Smith had not presented substantive grounds for relief based on his claim of actual innocence. The trial court was therefore permitted to dismiss this claim in the petition without an evidentiary hearing.
 II {¶ 19} Smith additionally claims that he is entitled to post-conviction relief on grounds of ineffective assistance of counsel. In a petition asserting ineffective counsel, "before a hearing is granted, `the petitioner bears the initial burden to submit evidentiary documents containing sufficient operativefacts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.'"Calhoun, 86 Ohio St.3d at 283, quoting Jackson,
64 Ohio St.32d at syllabus (emphasis added in Calhoun).
 {¶ 20} The Ohio Supreme Court has adopted the two part test for ineffective assistance of counsel articulated in Stricklandv. Washington (1984), 466 U.S. 668. See State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Under that test, "[a] convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v.Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, unreported, 2000 WL 1420271, quoting Strickland,466 U.S at 688, 694.
 {¶ 21} As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. Further, we are also guided by the presumption that attorneys licensed by the State of Ohio "provide competent representation." Jones, supra, citingState v. Hoffman (1998), 129 Ohio App.3d 403, 407. The second prong then requires a probability sufficient to undermine the confidence in the outcome of the proceedings. Jones, supra.
 {¶ 22} Smith's claim of ineffective assistance of counsel centers around his claim that his court appointed lawyer did not interview his accuser and two witnesses who he claims will validate his story. As to the two witnesses, Smith claims that they will testify to the fact that they observed the victim drive up to the convenience store and invite Smith into her vehicle — facts which would tend to corroborate his current story. However, he has made no mention of these two potential witnesses prior to this appeal, and the facts they are supposed to testify to again contradict the version of events Smith admitted to both in his guilty plea and in his presentence interviews. Moreover, Smith has failed to provide an affidavit of either of these two witnesses which would indicate that they would testify to these facts. Thus, Smith has failed to establish that the end result of the proceeding would have been different. Due to the lack of credibility one can attribute to Smith's new version of the facts, the trial court was free to determine that counsel's failure to interview these witnesses did not undermine confidence in the outcome of the proceedings.
 {¶ 23} Moreover, we cannot say that counsel's decision to not interview Smith's accuser was unreasonable. The results of the DNA tests indicated that they had sexual intercourse, and defense counsel was aware of the version of events Smith's accuser was going to testify to. It was reasonable for defense counsel to conclude that he had enough information with which to cross-examine Smith's accuser had the case gone to trial.
 {¶ 24} Regardless, the failure to interview Smith's accuser does not undermine confidence in the lower court proceedings. Smith pled guilty to the charges, and in doing so stated that he was satisfied with his counsel's handling of the case. Smith only voiced displeasure with the fact that he was going to serve "so much time [in prison]." However, he indicated that he was satisfied with counsel's performance. Under these circumstances, it is reasonable to conclude that the results would have been the same — had counsel interviewed the accuser, Smith still would likely have pled guilty to the charges.
 {¶ 25} Accordingly, the trial court did not err in holding that Smith's petition failed to present substantive grounds for relief and the trial court acted within its discretion in dismissing Smith's petition for post-conviction relief without an evidentiary hearing. The assignment of error is overruled and the judgment of the Common Pleas Court of Allen County, Ohio, is affirmed.
Judgment Affirmed.
 Cupp and Bryant, J.J., concur.
[1] The second rape indictment apparently stemmed from a similar incident that had occurred a few weeks before in Cincinnati, though the factual circumstances of that incident were not contained in the record.