OPINION
Defendant-appellant Gary Boyd appeals from a summary judgment denying his petition for post-conviction relief and his motion to withdraw his guilty plea. He contends that he presented sufficient evidence that his plea resulted from his trial counsel's deficient representation to entitle him to a hearing under R.C. 2953.21 and to withdraw his plea pursuant to Crim.R.32.1. We disagree. Applying State v. Calhoun (1999),86 Ohio St.3d 279, we conclude that the trial court properly discounted the credibility of Boyd's supporting affidavits, without which Boyd failed to present sufficient evidence to support a finding that his constitutional rights were violated, as required by R.C. 2953.21 and Civ.R.56. Furthermore, Boyd failed to show manifest injustice to support the motion to withdraw his guilty plea, made pursuant to Crim.R. 32.1. Accordingly, the judgment of the trial court is Affirmed.
 I
Boyd, an eighteen-year-old, was indicted in 1991 for the Aggravated Murder and Robbery of Roscoe Shipp, Jr. Both counts contained firearm specifications. Boyd's trial counsel, Dennis Lieberman, and the prosecutor's office negotiated a plea agreement, whereby Boyd pled guilty to the lesser-included offense of Murder, and the prosecutor withdrew the Aggravated Robbery charge and both firearm specifications. At his plea hearing, the trial court informed Boyd of his rights under Crim.R. 11. He then tendered both an oral and a written plea of guilty to Murder, which was accepted, and was sentenced to an indefinite prison term of 15 years to life. Boyd interposed no objection at this time.
In 2000, Boyd filed a pro se petition for post-conviction relief and a motion to withdraw his guilty plea. He subsequently filed an amended motion, in which he alleged that as a consequence of his trial counsel's deficient representation, his guilty plea was not entered into knowingly and voluntarily. In particular, he claimed that his trial counsel failed to share discovery and investigate certain statements made by LaConda Lee Johnson and David Williams, which suggested that he had not killed Shipp. Boyd also argued that Lieberman led him to believe that if he pled guilty to the lesser offense offered by the State then his sentence would be no more than seven years. He attached copies of Johnson and Williams' unsworn statements in support of his petition.
The State filed a motion for summary judgment. In support of its motion, the State offered Lieberman's affidavit to show that Boyd received adequate and timely discovery. Lieberman further averred that his investigation included interviews, examination of the scene, efforts to locate additional witnesses, and more. The State also offered copies of the trial transcript and a written plea agreement that acknowledge Boyd's understanding that his minimum sentence for murder was fifteen years. Boyd responded by offering an affidavit from his mother and himself. Both affiants claim that Lieberman failed to give Boyd discovery and that Lieberman indicated a deal had been reached whereby Boyd would serve no more than seven years in exchange for his guilty plea.
The trial court denied Boyd's petition for post-conviction relief, granted the State's motion for summary judgment, and dismissed his motion to withdraw his guilty plea, all without a hearing. In doing so, the trial court found that Boyd failed to provide evidentiary documents containing sufficient operative facts to establish that his plea was not entered into voluntarily and knowingly, based upon his trial counsel's allegedly deficient representation. In reaching this conclusion, the court credited Lieberman's affidavit over Boyd's and his mother's affidavits regarding whether Boyd received discovery, whether Lieberman conducted an adequate investigation, and whether any promises were made regarding what sentence Boyd would receive. From that decision, Boyd appeals.
 II
Boyd's first assignment of error is as follows:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE STATE SINCE IT INCORRECTLY APPLIED THE STANDARDS FOR DETERMINING SUMMARY JUDGMENT MOTIONS AND INCORRECTLY APPLIED THE SUMMARY JUDGMENT STANDARDS CONCERNING CREDIBILITY
Petitions for post-conviction relief are governed by R.C. 2953.21. A proceeding under this statute is not an appeal, but is instead a collateral civil attack on the judgment. Calhoun, supra. Thus, petitioners receive only those rights granted by the statute. Id. Under its provisions, any convicted individual may file a petition in the sentencing court and ask it to vacate or set aside its sentence, based upon an alleged constitutional violation. R.C. 2953.21. The statute makes clear, however, that not every petition requires a hearing. Id. For instance, "a petition for post-conviction relief is subject to dismissal without a hearing when the record, including the dialogue conducted between the court and the defendant pursuant to Crim.R. 11, indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises." State v. Kapper (1983), 5 Ohio St.3d 36, 38. A court will examine the post-conviction relief petition, any supporting affidavits, documentary evidence, and all records and files relating to the proceedings against the petitioner to determine if the petitioner has met this burden. R.C. 2953.21. If the petitioner fails to put forth sufficient substantive evidence demonstrating that he is entitled to relief, then the trial court is not required to hold an evidentiary hearing on the petition and may properly deny the petition. Calhoun,supra. Additionally, either party may move for summary judgment.
Ordinarily, "summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, saidparty being entitled to have the evidence construed most strongly in hisfavor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-70 (emphasis added). As Boyd correctly asserts, under this standard, a trial court may not assess the credibility of affiants or weigh evidence when evaluating a motion for summary judgment; however, that standard is modified when assessing the appropriateness of summary judgment on a defendant's petition for post-conviction relief:
 Unlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea. The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice.
Calhoun, supra.[1] Accordingly, judges may assess the credibility of affiants by considering several factors including:
 (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court.
Id. (Emphasis added.)
Applying these standards, we conclude that the trial court properly weighed the credibility of the affiants and correctly found that Boyd failed to set forth sufficient operative facts to establish a constitutional violation. Accordingly, the trial court could properly deny Boyd's claims without a hearing, for failing to meet his burden under R.C. 2953.21.
Under Civ.R. 56(C), the State bore the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record demonstrating that no genuine issue of material fact exists on the essential elements of Boyd's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Here, the State argued that Boyd was not denied effective assistance of counsel. Thus, Boyd failed to show a constitutional violation entitling him to relief under R.C. 2953.21. To support its argument, the State offered Lieberman's affidavit, which states:
 2) That he was retained to represent Defendant, Gary E. Boyd, in Case No. 91-CR-2217 in the Common Pleas Court of Montgomery County, Ohio and that he performed the duties of defense counsel in that case.
 3) That he received discovery in that case pursuant to Rule 16 of the Ohio Rules of Criminal Procedure and the Montgomery County Common Pleas Court's Court Management Plan on August 27, 1991, as memorialized on Exhibit A hereto; that he received supplemental discovery on or shortly after October 24, 1991, as memorialized on Exhibit B hereto; and that he shared the contents of that discovery with Gary E. Boyd by permitting him to read and/or by reading to him those contents and by discussing the witness statements, police reports, laboratory reports and other contents with him, as well as both the client's and Affiant's conclusions regarding the significance of those items.
* * *
 5) That Affiant conducted an investigation of the facts alleged in the indictment, which investigation included such measures as police and lay witness interviews, examination of the scene, efforts to locate additional witnesses and evaluations of assertions of fact made by Gary E. Boyd to Affiant.
 6) That Affiant never misrepresented the penalty for the offense of Murder in the State of Ohio to be incarceration for a period of seven years in Affiant's communications with Gary E. Boyd, any family member of Gary E. Boyd or any other person and never represented the negotiated plea discussions with any assistant prosecuting attorney to include an offer under which Gary E. Boyd would be incarcerated for a period of seven years.
Additionally, the State attached copies of Boyd's plea hearing and his written plea, which also demonstrate that Boyd understood the potential term of his sentence. For example, at the plea hearing, the trial judge engaged in the following conversation with Boyd:
 THE COURT: Do you understand that the penalty that can be imposed is fifteen (15) years on the minimum years and the maximum, well, fifteen (15) to life is the penalty that can be imposed. Do you understand that?
THE DEFENDANT: Yes
* * *
 THE COURT: Has there been any threats or promises made to you that influences your decision to plead guilty to murder other than the Prosecutor indicating to you, in accepting the plea bargaining proposal that they would reduce the Aggravated Murder to Murder, nolle or dismiss the Aggravated Robbery that was the Second Count of the Indictment here and dismiss or withdraw, nolle, the Firearms Specification that was on both the Aggravated Murder and the Aggravated Robbery charges. Has there been anything other than that that influences your decision to plead guilty to this particular case of this Murder charge?
THE DEFENDANT: No sir.
* * *
 THE COURT: And the last question I'd ask then, do you plead guilty voluntarily to the Murder charge that results from the reduction of the Aggravated Murder charge?
THE DEFENDANT: Yes sir.
* * *
 THE COURT: Okay. The Court would inquire if the Defendant or Counsel for the Defendant have anything that they would like to say as to why sentence should not be pronounced or with regard to any other thing that's relevant before we dispose of the matter.
MR. LIEBERMAN: Your Honor, we'd have nothing further to add.
THE COURT: You want to say anything?
THE DEFENDANT: No.
* * *
 THE COURT: I would explain to you that the Court has no discretion with regard to the penalty that is imposed. The statute imposes it and doesn't give me any leeway to make any adjustments except for the fine and there's not much use in imposing that, it likely would never get paid anyhow. The Court, being informed by counsel for the Defendant and the Defendant that they have nothing they'd like to say, the Court would impose a sentence of from fifteen (15) years to life imprisonment commencing at the Corrections Reception Center.
Tr. 3-6.
Once the State met its initial burden, Boyd had a reciprocal burden of showing that a genuine issue of material fact existed to prevent summary judgment. Id. at 294. He argued that Lieberman's representation was so deficient that he could not have entered his guilty plea knowingly and voluntarily. To prevail on this claim of ineffective assistance of counsel, Boyd was required to show deficient performance on the part of his counsel resulting in prejudice to him. State v. Bradley (1989),42 Ohio St.3d 136, 141-43. In support of this claim, Boyd proffered Johnson and Williams' unsworn statements. Additionally, he offered two affidavits. In his affidavit, he averred:
 2) Dennis Lieberman told me that if I were to plead guilty to the charge of MURDER, I would receive NO MORE THAN 7 YEARS INCARCERATION.
* * *
 4) Dennis Lieberman NEVER gave me any discovery information in my case until the year of 1997, after I requested it and threatened him with a malpractice suit.
 5) Every fact in my claims in my Petition for Post-Conviction Relief is true and correct in every aspect.
(Emphasis in the original.)
His mother also averred:
 2) Mr. Lieberman guaranteed me and my son that upon his plea of guilt, my son would receive seven years incarceration.
* * *
 4) Mr. Lieberman did not comply with CR16 by giving my son discovery information. Mr. Lieberman told me, for several years to come, that my son had no rights to discovery, and that he, had in fact, not received discovery himself.
Boyd claims that these witness statements and affidavits create a genuine issue of fact, and that the trial court erroneously dismissed their credibility. We disagree. As to Johnson and Williams' written statements, they are unsworn and do not suggest that Lieberman's representation was defective. Further, under Calhoun, supra, the trial court did not abuse its discretion in discounting the credibility of Boyd's affidavits. Although the trial judge who reviewed Boyd's post-conviction petition was not the same judge who presided at the change of plea and sentencing hearing, and Boyd's and his mother's supporting affidavits are not based upon hearsay, these affidavits were clearly made by two individuals otherwise interested in the success of Boyd's petition. More importantly, the affidavits contradict Boyd's statements to the trial court at his sentencing hearing. During this hearing, he assured the court that he had not been promised anything other than the prosecution's agreement to dismiss the Aggravated Robbery count and firearm specifications in exchange for his agreement to plead guilty to Murder. While Boyd and his mother now claim that he was promised that he would serve no more than seven years, the transcript of the plea hearing demonstrates that he was clearly informed of the potential sentence by the trial judge before he pled guilty both orally and in writing. "Defendant's own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review which shows that his plea was voluntary." Kapper, supra.
Boyd argues that his supporting affidavits do not contradict the record because the written plea agreement states that his sentence is "not actual incarceration." He claims this at least raises a question regarding whether he understood that he would serve more than seven years. However, the record reveals that Boyd entered an oral plea prior to this written one. Thus, we fail to see how any such confusion resulted in his initial oral plea. Further, Boyd made no objection at the time he was sentenced regarding a potential seven-year sentence. Perhaps most tellingly, Boyd waited eight years, an additional year past the alleged agreed sentence, to bring his petition for post-conviction relief. While we are sympathetic to the fact that Boyd was barely an adult at the time of his sentence, if he had any questions regarding his actual term of incarceration, then he should have raised them during the plea hearing. Like the trial court, we conclude that Boyd's self-serving affidavits are an attempt to recant prior statements that he made on the record at the time he entered his plea of guilty.
Boyd's affidavits were directly controverted by Lieberman's affidavit. Boyd argues that Lieberman's statements are conclusory and non-specific because Lieberman fails to assert specifically that he showed Johnson and Williams' statements to Boyd. We disagree. Lieberman represented Boyd over nine years ago. His affidavit is specific enough. He avers that he shared the entire discovery packet, including the statements of Johnson and Williams, with Boyd, and went over the witness statements with Boyd. Without some corroboration from Lieberman, the prosecution, the court, evidence in the record, or even the sole affidavit of one unaligned witness, Boyd's self-serving affidavits do not create a genuine issue of material fact justifying a hearing on his allegations.
Because Boyd failed to produce sufficient evidence to demonstrate that his constitutional rights were violated, as required by Civ.R. 56 and R.C. 2953.21, his first assignment of error is overruled.
 III
Boyd raises two other assignments of error. These assignments of error are as follows:
 A GUILTY PLEA MUST BE REVERSED IF UNDER THE TOTALITY OF THE CIRCUMSTANCES THE DEFENDANT DID NOT SUBJECTIVELY UNDERSTAND THE IMPLICATIONS OF HIS PLEA AND THE RIGHTS HE WAS WAVING
 A GUILTY PLEA MUST BE VACATED WHERE, BUT FOR THE INEFFECTIVENESS OF COUNSEL, THE PLEA WOULD NOT HAVE BEEN MADE
Common to both of these assignments of error is Boyd's contention that his guilty plea is defective because it was not knowingly and voluntarily made. Accordingly, we address them together.
Pursuant to Crim.R. 32.1 a post-sentence motion to withdraw a guilty plea is only permitted to correct a "manifest injustice." State v. Talley
(Jan. 30, 1998), Montgomery App. No. 16479, unreported. Absent an abuse of discretion, which implies that the trial court's decision is unreasonable, arbitrary, or unconscionable, a trial court's decision to deny a motion to withdraw a guilty plea will be affirmed. Id. The burden is on the defendant to demonstrate a "manifest injustice." Id.
Here, Boyd alleges that his plea was not made knowingly and voluntarily because of Lieberman's deficient performance. Based on our previous discussion, we agree with the trial court that the record does not support Boyd's claims. Cf. State v. Davidson (Aug. 5, 1996), Cuyahoga App. No. 69380, unreported (refusing to reverse trial court's denial of defendant's motion to dismiss in spite of defendant's claim that the court failed to advise defendant about the discretionary imposition of actual incarceration). As we previously explained, his two affidavits and two unsworn statements are insufficient to overcome the presumption that Boyd's plea was voluntary. Kapper, supra. Thus, this claim fails.
Because Boyd has failed to show manifest injustice, we find no error in the lower court's determination of his motion. Accordingly, Boyd's second and third assignments of error are overruled.
 IV
All of Boyd's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.
[1] At least one court contends that the civil rules do not apply to these proceedings. State v. McNeill (2000), 137 Ohio App.3d 34, 43
("Because a post-conviction proceeding is governed by its own statutory procedure, it was not necessary for the state to comply with the requirements of either Civ.R. 56 or Civ.R. 12(B).") We note our disagreement with this proposition, based upon our interpretation of the Ohio Supreme Court's holding in State v. Milanovich (1975),42 Ohio St.2d 46, 50-52.