[Cite as *State v. Cooper*, 2011-Ohio-1822.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.   23930 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 08-CR-1431 |
| v. | : | |
| | : | (Criminal Appeal from |
| DONALD COOPER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of April, 2011.

. . . . . . . . . .

MATHIAS H. HECK, JR., by TIMOTHY J. COLE, Atty. Reg. #0084117, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, Post Office Box 972, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

DONALD COOPER, A589-973, Lebanon Correctional Institution, Post Office Box 56, Lebanon, Ohio 45036
       Defendant-Appellant, *pro se*

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Donald Cooper appeals from the denial of his petition for post-conviction relief, without a hearing.   Cooper contends that the trial court should have held a hearing upon his claims that his trial counsel was ineffective for having failed to obtain, and produce, various items of evidence at his trial.

{¶ 2}   We conclude that the trial court properly denied his petition without a hearing.   With one exception, Cooper's claims that favorable evidence existed are entirely speculative.   The one exception is a record generated while Cooper was in prison, following his conviction, indicating the existence of a physical impairment that would limit his lifting ability to ten pounds.   But it is clear that this record did not exist at the time of trial, so trial counsel, who did present some evidence of Cooper's physical limitations, and used that evidence in his closing argument, can hardly have been ineffective for having failed to submit a piece of evidence that did not exist at the time of trial.

I

{¶ 3}   The facts are set forth in our opinion in Cooper's direct appeal, *State v. Cooper*, Montgomery App. No. 23143, 2010-Ohio-5517, ¶¶ 2-9, as follows:

{¶ 4}   "Shortly after 6:00 a.m. on March 29, 2008, twenty-year-old D.D. was on her way home from work.   When she got off of the bus in downtown Dayton, she called her mother to pick her up, who told her daughter that she (the mother) did not have enough gas.   Not wanting to wait for another bus, D.D. decided to walk to the Five Oaks neighborhood in which she lived.

{¶ 5}   "As D.D. walked north on Main Street, approaching Helena Street, she heard a man at the bus stop across the street call out, 'Hey girl.   Come here.'   D.D. looked up and saw the man (later identified as Cooper) walking toward her.   D.D. kept walking, but Cooper started walking faster, catching up to her.   Cooper grabbed D.D.'s arm and asked her where she was going, insisting that he wanted to talk to

her. The two talked for a couple of minutes, then D.D. told Cooper that she had to get home to her daughter.

{¶ 6} "Being only two blocks away from her home, D.D. tried to walk away, but Cooper followed her, continuing to talk. Becoming more concerned, D.D. sent a text message to her mother, asking for help. Cooper suddenly kissed D.D., who pushed him away, and repeated that she needed to get home to her child. Cooper grabbed her arm and told her, 'You're not going anywhere.' As Cooper dragged D.D. into an alley, she hit the send button on her phone to text her mother again.

{¶ 7} "In the alley, Cooper pushed D.D. onto her knees and shoved his penis into her mouth. Cooper then withdrew his penis and forced D.D. to masturbate him. D.D. managed to call her mother, who could hear her begging someone to leave her alone. The call was disconnected, and D.D.'s mother left the house to look for her daughter. D.D. claimed that Cooper then turned her around and pulled down her pants. D.D. testified on direct examination that Cooper vaginally raped her from behind, but on re-direct examination, she testified that Cooper anally raped her. When Cooper withdrew, D.D. ran down the alley to her home, where she told her siblings what had happened. D.D.'s mother arrived home a couple of minutes later, and the family went looking for Cooper, finding him back at the bus stop where D.D.'s ordeal began. They saw a police officer at a nearby store and reported the attack.

{¶ 8} "The officer arrested Cooper, and D.D. was taken to the hospital. She suffered from cut, swollen, and bruised lips, bruising to both arms, and an abrasion to her cervix. Cooper was indicted on two counts of rape and one count of gross sexual imposition.

{¶ 9} "Cooper testified that he had sex with D.D., but he insisted that it was consensual. He said D.D. was a prostitute and that he paid her $20 and shared some crack cocaine with her in exchange for oral sex that morning. Cooper also offered the testimony of Daphne Tillman, a drug addict and prostitute with an extensive criminal history. Tillman claimed that she knew D.D. to be a prostitute. She testified that she saw D.D. and Cooper smoking crack cocaine at the bus stop before walking together down the alley.

{¶ 10} "On rebuttal, the State offered the testimony of several police officers who stated that D.D. did not appear to be under the influence of either drugs or alcohol when they spoke to her. A detective in the vice squad was not familiar with either D.D .'s name or her face, and at the time of this offense there were no police records for D.D. for any crime, including prostitution.

{¶ 11} "A jury found Cooper guilty of gross sexual imposition and one count of rape for the act of fellatio, but not guilty of the other count of rape. The trial court ordered Cooper to serve consecutive sentences of ten years for rape and eighteen months for gross sexual imposition. * * *."

{¶ 12} On his direct appeal, Cooper's conviction was affirmed. Id.

{¶ 13} Cooper filed a petition for post-conviction relief. The trial court denied the petition, without a hearing. This appeal is taken from the order denying his petition for post-conviction relief.

II

{¶ 14} Cooper's sole assignment of error is as follows:

{¶ 15} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO HOLD AN EVIDENTIARY HEARING BEFORE DISMISSING PETITION FOR POST-CONVICTION RELIEF, A VIOLATION OF R.C. SECTION 2953.21 AND THE 14TH AMENDMENT DUE PROCESS, AND SUCH FAILURE AMOUTED [sic] TO PLAIN ERROR."

{¶ 16} A petitioner for post-conviction relief is not automatically entitled to a hearing upon his petition. *State v. Calhoun* (1999), 86 Ohio St.3d 279. Although Cooper, in his petition, has cited various federal and state constitutional grounds for relief, they are all predicated upon various allegations that his trial counsel was ineffective. The absence of evidentiary documents containing sufficient operative facts to make out a claim of ineffective assistance of trial counsel is a proper basis for denying a petition for post-conviction relief without a hearing. *State v. Kapper* (1983), 5 Ohio St.3d 36, 39.

{¶ 17} In support of his three claims for relief, Cooper set forth the following as the facts supporting each claim:

{¶ 18} "CLAIM NUMBER ONE

{¶ 19} " * * * *

{¶ 20} "Trial counsel failed to have examined, and submitted key evidence which could have substantiated claim of consensual sex and proved innocence.

{¶ 21} " * * * *

{¶ 22} "A drug analysis of alleged victim's bodily materials contained in the State's rape-kit will substantiate claim of 'sex for drugs,' and an inspection of alleged victim's <u>clothings</u> (also in evidence) will <u>disprove</u> element of force by dragging alleged

victim into allley.

{¶ 23} " * * * *

{¶ 24} "CLAIM NUMBER TWO

{¶ 25} " * * * *

{¶ 26} "Trial attorney failed to call an expert witness who could have established that the prosecution's medical documents and photos (taken hours after alleged abrasions) were not consistent to the offenses of rape and gross sexual imposition by force, and could have proved innocence.

{¶ 27} " * * * *

{¶ 28} "If granted a hearing, Mrs. Janet Aubrey Jackson, Nursing Supervisor at Good Sam. Hospital, Dayton, Ohio, who has a Master's Degree, and seventeen (17) years experience, will testify that had she been called at trial she could have examined the State's medical documents and photos, and possibly proved innocence.

{¶ 29} "CLAIM NUMBER THREE

{¶ 30} " * * * *

{¶ 31} "Trial counsel failed to provide key evidence which could have shed more doubt on the prosecution's case, and no reasonable fact finder would have found Petitioner guilty; to wit: medical records of Petitioner, and evidence of false testimony and false written statements made by alleged victim.

{¶ 32} "Attached hereto are the following evidence and affidavit: (1) A medical document showing limitations of Petitioner after a physical exam done one working day after he arrived at prison; and (2) Petitioner's Affidavit."   (Underlining in original.)

{¶ 33} The "Petitioner's Affidavit" referred to is Cooper's own affidavit, which essentially repeats the allegations set forth in his petition.

{¶ 34} We have the record, and the victim's clothing was neither offered, nor received, in evidence. Likewise, the rape kit was neither offered, nor received, in evidence, although the Miami Valley Regional Crime Laboratory's report concerning its findings and conclusions from the rape kit was received in evidence as State's Exhibit 11.

{¶ 35} The only documentary evidence Cooper submitted in support of his petition have to do with his claim that he had a physical infirmity, or impairment, that would have made it unlikely that he could have "dragged" his victim off the main street into an alley. There are two problems with this claim. The first is that the documents in question were generated in prison after Cooper was tried and convicted. One of these is a statement that Cooper was issued an arm and wrist splint on September 7, 2009, which, by its terms, evidently constituted a "pass," e.g., permission for Cooper to possess the splint, which would otherwise be considered contraband. The other is a "Medical Restriction(s) Statement," dated November 17, 2008, reflecting the existence of three long-term restrictions beginning that date: "Low Bunk," "Low Range," and "No lifting greater than 10 lbs."

{¶ 36} Cooper's trial counsel presented evidence of Cooper's physical limitations at trial, and argued to the jury that these limitations made it unlikely that Cooper could have forced his victim into the alley. Obviously, trial counsel cannot be deemed to have been ineffective for having failed to offer the prison documents Cooper submitted in support of his petition for post-conviction relief, since they did

not exist at the time of trial.

{¶ 37} The second problem with this claim is that the evidence at trial did not establish that Cooper "dragged" his victim into the alley in the most literal sense of that verb. On direct, the victim testified that: "He grabbed my arm and took me to the back of the alley." When asked if she went with him willingly, or if he forced her, she testified: "He forced me * * * ."

{¶ 38} The victim was then asked some questions about what happened on the way to and through the alley, in which the prosecutor used the verb "to drag," but the victim did not use that verb. On cross-examination, defense counsel used the verb "to pull," and the victim did use this verb, herself, e.g.:

{¶ 39} "Q. Reached across, grabbed you with this arm, pulled you into the alleyway?

{¶ 40} "A. Yes. Because I was turned as he was pulling me.

{¶ 41} "Q. Okay. You were turned meaning he pulled your body around?

{¶ 42} "A. Yes."

{¶ 43} If we were to assume: (1) that the victim's clothing from the time of the alleged offense still existed, in the same condition, at the time that Cooper's trial counsel began representing him; and (2) that the victim's clothing would have been intact, without any unusual wear and tear, both of which assumptions are entirely speculative, that still would not have been inconsistent with the victim's testimony concerning the offense. Therefore, we cannot find that trial counsel's failure to have sought the production of the victim's clothing would have satisfied the prejudice prong of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

674.

{¶ 44} The rest of Cooper's claims are entirely speculative. There is no reason to believe that an analysis of the victim's hair would have established that she was a crack cocaine addict. No evidence, beyond Cooper's bare allegation, has been submitted to establish that Janet Aubrey Jackson would have testified and "possibly proved innocence." And Cooper has offered no evidence, beyond his bare assertion, that there was evidence of the victim's false testimony and false written statements, other than the discrepancies that trial counsel did, in fact, exploit at trial, and the testimony of a witness, Daphne Tillman, that the victim appeared to be smoking crack cocaine with Cooper before they went into the alley, which was, in fact, presented to the jury at the trial.

{¶ 45} We conclude that the trial court correctly found that Cooper's petition for post-conviction relief lacked sufficient support, in the form of documentary materials other than his own, self-serving affidavit, to justify an evidentiary hearing upon his petition. Cooper's sole assignment of error is overruled.

III

{¶ 46} Cooper's sole assignment of error having been overruled, the order of the trial court denying his petition for post-conviction relief is Affirmed.

. . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck
Timothy J. Cole

Donald Cooper
Hon. Dennis J. Langer