[Cite as *State v. Tullis*, 2014-Ohio-1286.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2013-CA-55 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-607 |
| v. | : | |
| | : | |
| DAMERICK TULLIS | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of March, 2014.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by NATHANIEL R. LUKEN, Atty. Reg. #0087864, Greene County Prosecuting Attorney, 61 Greene Street, Xenia, Ohio 45385
    Attorneys for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. #0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    Damerick Tullis appeals the trial court's entry of summary judgment for the state

on his petition for postconviction relief. Finding no error, we affirm.

## I. FACTS

{¶ 2} The trial court overruled Tullis's motion to suppress the statements and confessions he made to detectives, and Tullis pleaded no-contest to two counts of voyeurism, two counts of burglary, two counts of kidnaping, one count of attempted rape, and one count of rape. Tullis appealed to this Court, arguing that the trial court erred in overruling his motion to suppress. Our opinion recited the following facts, pertinent here:

On the morning of October 17, 2011, Detective Daniel Foreman called Tullis at Wright-Patterson Air Force Base, where Tullis worked, and asked him to come to the [Fairborn] police department to discuss some cases. Tullis agreed and arrived at the department a little after noon the same day. Detective Foreman and Detective Ryan Whittaker met Tullis and took him to an interview room. Foreman told Tullis that he was not under arrest and that he was free to leave at anytime. * * *

The detectives questioned Tullis about an incident of voyeurism. They told Tullis that a witness had reported seeing him peering into a neighbor's windows. At first, Tullis denied that he had done this, but later, he confessed. Tullis also confessed to a second incident of voyeurism and confessed to burglary, kidnaping, and rape. The interview lasted about two hours. When the interview was completed, Tullis was allowed to leave the police department.

*State v. Tullis*, 2d Dist. Greene No. 2012-CA-59, 2013-Ohio-3051, ¶ 2-3.

{¶ 3} Tullis argued in his direct appeal that his confession was involuntarily given:

Tullis contends that the detectives induced him to confess by promising that if he confessed, his employer would not be told. Tullis initially denied that he

had done anything wrong, but later he confessed to an instance of voyeurism. Tullis says that he confessed because one of the detectives told him that "this doesn't even have to be something that the Base finds out about since it's relatively minor" and that "the Base doesn't have to get involved in all this." Later, says Tullis, when the detective confronted him with allegations of another instance of voyeurism, burglary, and rape, the detective said to him, "If I feel like you're being dishonest with me, then I gotta get a hold of the Base and stuff like that." Tullis says that the threat to contact the Base induced him to confess because he did not want the Base to find out, which would ruin his military career. In other words, says Tullis, this threat communicated hope that if he confessed, he would receive the benefit of continuing his life and career without interruption.

*Id*. at ¶ 20. We rejected Tullis's argument, concluding that "[n]othing in these facts and circumstances suggests improper coercion leading to an involuntary confession." *Id*. at ¶ 23. We said that there was "nothing unduly coercive here in the detectives' conduct or language," *id*., and we found that Tullis's will was not overborne:

It was unreasonable of Tullis to infer from the detectives' statements that a confession would mean that the Base would not find out. Even someone unfamiliar with the statutory penalties for the potential offenses would realize that the matter had serious consequences. Tullis should have realized that the Base was bound to find out, in fact he said he had already sought counseling related to his tendencies that led to the offenses. Given what the evidence reveals about Tullis, we do not think that his will was overborne by the detectives' conduct and

language.

*Id*. at ¶ 22.

{¶ 4}    While we were deciding his direct appeal, Tullis filed with the trial court a petition for postconviction relief, arguing that new evidence shows that the detective's statements quoted above were unconstitutionally coercive. Tullis claims in the petition that Detective Foreman's statement that "stated or implied that the military may never need to know about (the) interview and the contents" "ultimately contributed" to his confessions. *(Petition for Post-Conviction Relief)*. The statement, says Tullis, "was not only not accurate but there is no chance that it would have been true given the process that is employed by the Wright Patterson Air Force Base." *(Id.)*. In support, Tullis attached to the petition copies of agreements that the 88th Security Forces Squadron at Wright-Patterson has with area law enforcement, including the Fairborn police department. Under these agreements, law enforcement must give the Security Forces Squadron any criminal information that it collects involving active duty military personnel and must tell the squadron if it incarcerates or charges any base personnel with a crime. Tullis asserts that Detective Foreman, who testified at the motion-to-suppress hearing that he had been in the military, must have known what the agreements required and therefore that what he was telling Tullis was untrue.

{¶ 5}    The state moved for summary judgment. Attached to its motion is an affidavit from Detective Foreman in which he avers, "At the time of the interview, I was unaware of any mutual aid agreement between the Fairborn Police Department and Wright Patterson Air Force Base Security Forces calling for the Fairborn Police to apprise Base Security Forces about all criminal investigations regarding active duty personnel." *(Affidavit of Dan Foreman, Detective*

*Fairborn Police Department*, ¶ 3). Instead, avers Detective Foreman, "* * * I was operating under a policy wherein the Base Security Forces would be notified if any personnel were arrested and placed in custody. * * *" *(Id.* at ¶ 4).

**{¶ 6}** While the trial court was deciding the summary-judgment motion, we entered judgment in Tullis's direct appeal. Based on our *Tullis* opinion, the trial court granted the state summary judgment. The court cited our determination (quoted above) that it was unreasonable for Tullis to infer from Detective Foreman's statements that a confession would mean the military would not find out about the situation. And the court cited our determination that there was nothing unduly coercive in the detective's conduct or language that overbore Tullis's will. Given our conclusion that Tullis's confession was voluntarily made, said the court, no genuine issue of material fact remains.

**{¶ 7}** Tullis appealed.

## II. ANALYSIS

**{¶ 8}** Tullis alleges that the trial court erred by entering summary judgment for the state on his petition for post-conviction relief. He contends that the trial court failed to address the issues presented in the petition and should not have relied solely on our direct-appeal opinion.

**{¶ 9}** Tullis says that the trial court does not refer to any of the petition's arguments or mention the new evidence presented. Instead, says Tullis, the court "essentially ratifies" our decision on a "tangentially related assignment of error." (*Brief of Appellant*). He says that the trial court's decision "simply makes generic conclusive statements that because another court decided an issue of similar import that there need be no further examination of the issue presented." (*Id.*).

{¶ 10} "[A] petition for postconviction relief 'is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment,' in which a claimant asserts that either actual innocence or deprivation of constitutional rights renders the judgment void." *State v. Silsby*, 119 Ohio St.3d 370, 2008-Ohio-3834, 894 N.E.2d 667, ¶ 16, quoting *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). The governing statute, R.C. 2953.21, provides that "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21(A)(1)(a).

{¶ 11} Summary judgment must be entered if the summary-judgment evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). Here the key question is whether any issue of fact exists as to whether there has been a denial or infringement of Tullis's rights. In *Tullis*, we concluded that his constitutional rights were not denied or infringed upon by Detective Foreman's statements because the statements were not unconstitutionally coercive. The new facts asserted by Tullis in his petition do not affect this conclusion. Detective Foreman's affidavit shows that, at the time of the interview, he did not know that the Fairborn police were required to tell the base about criminal investigations involving base personnel. Also, the accuracy of the detective's statements is irrelevant to the analysis. As we said in *Tullis*, " ' "[t]he line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement *does not depend upon the bare language of inducement* but rather upon the

nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police." ' Police use of tactics like admonitions to tell the truth are not improper." (Emphasis added.) (Citations omitted.) *Tullis*, 2013-Ohio-3051, at ¶ 22, quoting *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 28, quoting *People v. Flores*, 144 Cal.App.3d 459, 192 Cal.Rptr. 772 (1983). Here, "[t]he detectives * * * simply urged Tullis, in a variety of ways, to tell the truth." *Id.*

{¶ 12} The trial court is correct that no issue of material fact remains. The entry of summary judgment for the state was proper.

{¶ 13} The sole assignment of error is overruled.

{¶ 14} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, JJ., concur.

Copies mailed to:

Stephen K. Haller
Jay A. Adams
Nathaniel R. Luken
Hon. Stephen Wolaver