[Cite as *State v. Daniels*, 2019-Ohio-3256.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180176 |
| | | TRIAL NO. B-0808717 |
| Respondent-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| BARRY DANIELS, | : | |
| Petitioner-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 14, 2019


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Respondent-Appellee,

*Gloria L. Smith*, for Petitioner-Appellant.

**CROUSE, Judge.**

{¶1}    Petitioner-appellant Barry Daniels appeals the Hamilton County Common Pleas Court's judgment dismissing his petition under R.C. 2953.21 et seq. for postconviction relief.    We affirm that judgment, because the court lacked jurisdiction to entertain Daniels's late postconviction petition.

{¶2}    In 2009, Daniels was convicted of rape and gross sexual imposition upon his nine-year-old niece.    At trial, the victim testified that on September 17, 2008, after spending the day with Daniels and his nine-year-old daughter Barriesha, she had received permission from her mother to spend the night with Barriesha at Daniels's apartment.    The victim and Barriesha settled in together on a pallet on the floor in Daniels's living room to watch movies.    The victim stated that after Barriesha had fallen asleep, Daniels had come into the living room, turned off the television, twice pulled the covers over the girls' faces, kneeled beside her, "lifted up [her] leg, and then started rubbing [her] private * * * under [her] underwear," with his hand first inside and then, after she told him to stop, outside her vagina, until she curled into a ball and he returned to his bedroom.    The victim stated that the following morning, she told Barriesha that somebody had touched her the night before, and that when she got home, she told her mother what had happened.

{¶3}    The victim's mother called Daniels to confront him with the allegation. He claimed that the alleged sexual assault had been a dream; the victim insisted to her mother that it had not.

{¶4}    The victim's mother then reported the matter to the police and took the victim to the hospital.    The victim was interviewed by a social worker.    The state played for the jury a videotape of that interview, during which the victim described how Daniels had touched her.    The victim was also examined by a doctor who was

qualified at trial as an expert in the treatment and diagnosis of child sexual abuse. The doctor offered her opinion that abuse was "concerning/probable" in the victim's case. And her opinion was not altered by the absence of trauma to the victim's genitalia, because "examination findings are normal" in "over 90 percent" of "substantiated" cases of sexual abuse.

{¶5} A police detective investigating the matter interviewed Daniels's daughter Barriesha. Before the detective could ask her first question, Barriesha provided her version of the night's events, causing the detective to suspect that Barriesha had been "coached." The detective's suspicions prompted her to obtain records of Daniels's telephone calls from jail to Barriesha's mother's cell phone. Those conversations were played for the jury at trial. They included Daniels's statements to Barriesha's mother, during several conversations, that "the most important thing is [Barriesha's] testimony, so you need to talk to her * * * and make sure she understands what she is to say and no more," and that what she was "going to have to say" was that the victim had kept Barriesha awake all night with her "moving" and "kicking" and "[t]hat's why [Barriesha] remember[ed] seeing me" "come in there and turn that TV off and went back into my room." Daniels also spoke on the phone to Barriesha. He asked her to "[r]emember the night [the victim] spent the night," and that the victim "kept kicking you all through the night," so that "[you were awake to see] me when I came in there and turned the TV off." He went on to ask Barriesha to "remember * * * when [the victim] got up in the morning" and "she was telling us about a dream she had that somebody had broke in her house * * * and came in there and picked her leg up and touched her, and then she was scared they was going to rape her * * *, [b]ut then she woke up and there wasn't nobody

there." Finally, Daniels told Barriesha, "[I]f you don't remember all that stuff [when you talk to defense counsel], they'll probably send me to the penitentiary, okay."

{¶6} Barriesha did not testify at trial. Daniels did. He admitted to a prior rape conviction. But he denied sexually assaulting the victim, providing a version of that night's events substantially similar to the version that he had asked Barriesha to "remember." Concerning his instructions to Barriesha and her mother during their telephone conversations, he denied "coaching" Barriesha, explaining that because he believed that Barriesha suffered from attention deficit disorder, he had to "parent[] [her] * * * to keep her mind fresh as to what happened."

{¶7} Daniels unsuccessfully challenged his convictions on direct appeal and in a motion for a new trial. *State v. Daniels*, 1st Dist. Hamilton No. C-090566, 2010-Ohio-5258, ¶ 3-7, *appeals not accepted*, 128 Ohio St.3d 1412, 2011-Ohio-828, 942 N.E.2d 385; *State v. Daniels*, 1st Dist. Hamilton No. C-130150 (Nov. 15, 2013), *delayed appeal denied*, 138 Ohio St.3d 1431, 2014-Ohio-889, 4 N.E.3d 1049. In 2017, he again challenged his convictions by filing with the common pleas court a postconviction petition, seeking relief on the ground that his trial counsel had been ineffective in investigating and presenting his defense. The court dismissed the petition upon its determination that Daniels had failed to satisfy the R.C. 2953.23 jurisdictional requirements for a late postconviction petition.

{¶8} In this appeal, Daniels presents three assignments of error that, read together, challenge the dismissal of his postconviction petition without an evidentiary hearing. We overrule the assignments of error.

{¶9} Daniels filed his postconviction petition over seven years after the time prescribed by R.C. 2953.21(A)(2) had expired. R.C. 2953.23 closely circumscribes the jurisdiction of a common pleas court to entertain a late postconviction petition.

The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his postconviction claim depends, or that his claim is predicated upon a new and retrospectively applicable right recognized by the United States Supreme Court since the time for filing his petition had expired. And he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted * * *." R.C. 2953.23(A)(1).

{¶10} In the sole ground for relief advanced in his petition, Daniels asserted that his trial counsel had been constitutionally ineffective in failing to "develop[]" and present at trial exculpatory eyewitness testimony by his daughter. And he asserted that he had been unavoidably prevented from discovering the facts upon which that claim was based, because he was indigent and incarcerated, and because Barriesha's mother had refused his request for Barriesha's affidavit to be notarized, and Barriesha could not legally sign that affidavit until she turned 18.

{¶11} Daniels supported his petition with his and Barriesha's affidavits, in which they attested to his efforts to secure her testimony, either by subpoena for trial or by affidavit for postconviction proceedings, and to Barriesha's mother's resistance to those efforts. That resistance, Daniels and Barriesha insisted, was attributable to her mother's fear of losing custody of her other children. Daniels averred, "After I was convicted, I was told that [the police detective who had interviewed Barriesha] told [Barriesha's] mother that if she brings [Barriesha] back to court as a witness on my behalf, the court could take away all of her other children because of my past record." And Barriesha averred, "Before leaving [the police detective's] office, she told my mother that if she brought me back to court as a witness, the court could take all of her children away from her because of my dad's past record."

{¶12} But the trial record and Daniels in his affidavit contradict his self-serving averment that he had been unavoidably prevented from discovering the facts

5

upon which his postconviction ineffective-counsel claim depended. He stated in his affidavit that he had learned of the police detective's alleged threat sometime "[a]fter [he] was convicted," but "years" before he filed his postconviction petition. And the record shows that he and his counsel knew at the time of trial that Barriesha, in her police interview, had provided a statement exonerating him in the sexual assault, and that the police detective had developed a belief that the statement had been "coached." *See Daniels*, 1st Dist. Hamilton No. C-090566, 2010-Ohio-5258, at ¶ 5.

{¶13} Moreover, in determining whether Daniels had demonstrated unavoidable prevention, the common pleas court had the discretion to discount the credibility of the affidavits offered in support of the petition, without first conducting an evidentiary hearing. In assessing an affidavit's credibility, and thus determining the need for a hearing, a court must consider all relevant factors, including (1) whether the judge reviewing the motion also presided at trial, (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person, (3) whether the affidavit contains or relies on hearsay, (4) whether the affiant is related to the defendant or otherwise interested in the success of his postconviction efforts, (5) whether the affidavit contradicts defense evidence, (6) whether the affidavit is contradicted by any other sworn statement of the affiant, and (7) whether the affidavit is internally inconsistent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

{¶14} As we noted, Daniels's affidavit was internally inconsistent on the issue of unavoidable prevention. The allegation concerning the police detective's threat was presented in nearly identical language in Barriesha's and Daniels's affidavits. And the manner in which that allegation was phrased in their affidavits suggested that it relied on hearsay. Also, Daniels was plainly interested, and Barriesha admitted in her affidavit her interest, in the success of his postconviction petition.

Thus, we cannot say that the common pleas court abused its discretion in deciding the issue of unavoidable prevention without an evidentiary hearing.

{¶15} The petition and its supporting material did not show that Daniels had been unavoidably prevented from discovering the facts upon which his postconviction claim depended. Therefore, the postconviction statutes did not confer upon the common pleas court jurisdiction to entertain the petition. *See* R.C. 2953.23(A)(1). And while a court always has jurisdiction to correct a void judgment, *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 18-19, his ineffective-counsel claim, even if demonstrated, would not have rendered his convictions void. *See State v. Hayes*, 1st Dist. Hamilton No. C-130450, 2014-Ohio-1263, ¶ 5.

{¶16} Because the common pleas court had no jurisdiction to entertain Daniels's postconviction petition, the petition was subject to dismissal without an evidentiary hearing. *See* R.C. 2953.21(D) and 2953.23(A). Accordingly, we affirm the court's judgment dismissing the petition.

Judgment affirmed.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.