[Cite as *State v. Cruz*, 2025-Ohio-379.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JAMIE CRUZ,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0045

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CR 65

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

**JUDGMENT:**
Affirmed.

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor*, Atty. Jacob A. Manning,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Christopher P. Lacich*, Roth, Blair, for Defendant-Appellant.

Dated:  February 5, 2025

**Robb, P.J.**

{¶1} Appellant, Jamie Cruz, appeals the August 15, 2024 judgment sentencing him to 78 months in prison after he entered guilty pleas to domestic violence, bribery, and violating a protective order.

{¶2} Cruz argues the trial court erred by failing to merge his bribery and protective order counts and his trial counsel was ineffective for failing to raise this issue to the court. Cruz also contends this merger argument constitutes plain error. Last, Cruz claims the trial court's imposition of consecutive sentences was excessive and contrary to law. For the following reasons, we affirm.

Statement of the Facts and Case

{¶3} Cruz was indicted in April of 2024 and charged with kidnapping, felonious assault, and tampering with evidence. Cruz entered a not guilty plea; the court ordered him to have no contact with the victim; and the case was set for trial in May of 2024.

{¶4} The April 10, 2024 bill of particulars states for the kidnapping count that Cruz, by force of threat or deception, removed the victim and restrained her of her purpose with the intent of terrorizing or inflicting serious physical harm on her. As for the felonious assault charge, the bill of particulars alleges Cruz knowingly caused serious physical harm to the same victim. As for count three, tampering with evidence, the bill of particulars alleges Cruz knowingly destroyed, concealed, or removed a document or thing with the intent to impair its value or availability as evidence in a proceeding or investigation. It alleges Cruz did this with the purpose to corrupt the outcome of the proceedings or investigation. (April 10, 2024 Bill of Particulars.)

{¶5} In May of 2024, Cruz moved the court to dismiss two of the charges against him. For cause, Cruz alleged the victim had twice recanted the allegations against him and she also demonstrated she was not going to participate in the criminal proceedings against Cruz. (May 23, 2024 Motion to Dismiss.)

{¶6} The state moved to modify Cruz's bond and preclude him from using any form of telecommunication except to communicate with defense counsel. The state alleged that despite the no contact order, which was in effect since April 5, 2024, Cruz had contacted the victim on a daily basis "through a variety of means and methods." The

state alleged it was aware of more than 1,000 phone calls to the victim during the time when the no-contact order was in effect. The state alleged these calls were in addition to the video visits, text messages, and electronic letters directed to her from Cruz. Moreover, the state alleged Cruz was texting the victim, who had a warrant out for her arrest, and was directing her to avoid being arrested until after Cruz's speedy trial time had expired. (May 21, 2024 Motion to Modify Bond, Ex. A.)

{¶7} The state then moved to continue trial. It alleged that Cruz had repeatedly violated the court's no-contact order. The state also alleged it had learned about Cruz's prior offense of violence in Pennsylvania and that the state intended to present certain matters to the Belmont County Grand Jury to secure an additional or superseding indictment. (May 23, 2024 Motion to Continue.)

{¶8} The trial court overruled Cruz's motion to dismiss and granted the state's motion to continue the trial. The court noted the state presented evidence showing Cruz violated the court's no-contact order with the victim countless times, and thus, the court limited Cruz's access to communication devices, except to communicate with defense counsel. (May 28, 2024 Judgment.)

{¶9} A superseding indictment was issued in June of 2024, charging Cruz with five counts: 1.) kidnapping, a first-degree felony, with a repeat violent offender specification; 2.) felonious assault, a second-degree felony, with a repeat violent offender specification; 3.) domestic violence, a third-degree felony; 4.) bribery, a third-degree felony; and 5.) violation of a protective order, a third-degree felony. (June 6, 2024 Superseding Indictment.)

{¶10} Regarding the bribery count, the superseding indictment alleged in part that Cruz offered to pay another's attorney's fees and other unrelated charges with the purpose of improperly corrupting or influencing her testimony in an official proceeding. Regarding count five, violating a protective order, it states in part that Cruz recklessly violated the terms of a protective order. (June 6, 2024 Superseding Indictment.)

{¶11} Cruz entered a not guilty plea and filed a motion to sever counts four and five for trial, claiming the violation of a protective order charge and bribery charge were prejudicial and should not be heard in conjunction with the kidnapping and felonious

assault charges since all of the offenses involve the same victim. (June 11, 2024 Motion to Sever.)

**{¶12}** The state moved to call the victim at trial as the state's witness in light of her inconsistent statements and attempt to retract the allegations against Cruz. The state also opposed Cruz's motion to sever. (June 20, 2024 Response.)

**{¶13}** Cruz filed a second motion to dismiss, which again sought dismissal of three counts on the basis that the victim recanted her allegations against him. (June 20, 2024 Motion to Dismiss.) The state opposed this motion.

**{¶14}** Cruz subsequently moved to unseal the grand jury testimony. (June 25, 2024 Motion to Unseal.)

**{¶15}** The trial court subsequently released the victim on her own recognizance after taking her testimony during a hearing on Cruz's motion to dismiss. The court then granted the state's motion to call the victim as the court's witness, and it took Cruz's motion to dismiss under advisement. (June 28, 2024 Judgment.)

**{¶16}** The trial court denied Cruz's motion to dismiss but granted his motion to unseal the grand jury testimony. (July 9, 2024 Judgment.) Thereafter, the trial court denied Cruz's motion to sever. (July 18, 2024 Judgment.)

**{¶17}** In July of 2024, Cruz entered a guilty plea to counts three, four, and five: domestic violence, a fourth-degree felony in violation of R.C. 2919.25(D)(3); bribery, a third-degree felony in violation of R.C. 2921.02(C); and violating a protective order, a third-degree felony in violation of R.C. 2919.27(A)(1) and (B)(4). In exchange, the state agreed to nolle prosequi counts one and two. The parties also agreed to make a jointly recommended sentence of 4.5 years and that neither would argue for merger. (July 30, 2024 Guilty Plea.)

**{¶18}** Cruz entered the guilty plea agreement after the commencement of trial. The court confirmed on the record that there would be no argument about counts four and five merging, and defense counsel agreed to this on the record when asked by the trial court judge. (July 22, 2024 Tr. )

**{¶19}** The court granted the state's motion to amend count three, domestic violence, to a felony of the fourth degree. It also granted the state's request to dismiss counts one and two. The trial court accepted Cruz's guilty plea; ordered a presentence

investigative report and victim impact statement; and scheduled sentencing. (July 30, 2024 Judgment.)

{¶20} Both sides filed sentencing memorandums. Cruz's memo comments on the issue of merger despite the parties' agreement not to argue merger. It asserts that although the parties agreed not to argue merger, he believed merger of counts four and five was appropriate. Cruz alleged these counts arose from the same conduct and were of similar import. (August 7, 2024 Sentencing Memorandum.)

{¶21} The state's sentencing memorandum responded to the defense comments on merger. The state explained the issue was waived because Cruz agreed not to argue that the two counts would merge. Second, the state argued the charges were not based on the same conduct. Instead, the state pointed to the victim's trial testimony in which she testified that "during a span of days," Cruz made numerous promises and offers to her with the purpose of influencing or corrupting her testimony. The state alleged this testimony supported several bribery convictions. Additionally, the state claimed this testimony established the charge of violating a protective order. (August 12, 2024 Sentencing Memorandum.)

{¶22} At the sentencing hearing, the parties again discussed merger. Defense counsel acknowledged Cruz agreed not to "argue for" merger, yet counsel argued he was nevertheless not waiving the argument for appeal. The state agreed that Cruz and defense counsel agreed counts four and five do not merge. The prosecution again emphasized, even without the agreement that these offenses would not merge, it was the state's position that they should not merge. The state referred to the victim's trial testimony during which she described multiple instances of Cruz making offers or promises to influence her testimony. The prosecution further identified Cruz's offer to pay for the victim's attorney's fees, as well as "additional services." The state explained how Cruz offered to pay to have the victim's face tattoo covered and offered to pay to get her hair and "toes done." Cruz told the victim she would never have to work again if she told the grand jury she wanted the charges against him dropped. The state pointed out that from the time Cruz was arraigned, he made more than 1,000 phone calls to ten different numbers associated with the victim before the court limited Cruz's access to

communication devices. And after Cruz's telephone privileges were revoked, he still attempted to contact the victim more than 40 times. (Sentencing Tr. 16.)

**{¶23}** The trial court found the counts do not merge for two reasons. First, the court noted the parties agreed the counts would not merge. Second, the court concluded there was trial testimony depicting numerous violations of both charged offenses, such that Cruz was not charged for the same behavior. The court explained:

> evidence demonstrated Defendant violated Count V [bribery] hundreds of times and Count IV [violating a protective order] multiple times. Both [charged offenses were] committed [by Cruz] on multiple occasions and by different methods. Yet [the] State only sought one conviction for a violation of Count IV & one conviction for Count V.

(August 15, 2024 Sentencing Judgment.)

**{¶24}** Cruz was sentenced to 18 months for count two, domestic violence; 24 months for count four; and 36 months for count five. The court ordered the sentences to be served consecutively and found consecutive sentences were necessary to protect the public from further crime and to punish the defendant. The court also found consecutive sentences were not disproportionate to the seriousness of Cruz's conduct and the danger he posed to the public. (August 15, 2024 Sentencing Judgment.)

**{¶25}** Cruz appealed and raises one assignment of error, which asserts:

"The trial court erred when it imposed a sentence clearly and convincingly contrary to law, when it sentenced the appellant to a prison sanction of 78 months, by not implementing merger and/or by imposing consecutive sentences."

**{¶26}** His assignment of error is comprised of five subarguments.

<u>Merger of Allied Offenses</u>

**{¶27}** Cruz's first four subarguments deal with merger, and as such, we address them collectively. They assert:

1. Whether the record sets forth by clear and convincing evidence that defendant-appellant's sentence is contrary to law?

2. Whether the trial court's decision not to merge counts IV and V pursuant to R.C. Sec. 2941.25 was contrary to law?

3.    Whether plea counsel was ineffective for his failure to recognize that the trial court had a duty to consider merger under R.C. Sec. 2941.25 and be prepared to argue for the same?

4.    Whether plea counsel preserved the issue of the merger of allied offenses on record, or whether plain error is invoked?

**{¶28}** R.C. 2941.25 codifies the double jeopardy protection against multiple punishments for the same offense.  *In re A.G.*, 2016-Ohio-3306, ¶ 11; *State v. Ruff*, 2015-Ohio-995, ¶ 10, 12.  It states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶29}** In evaluating whether allied offenses must be merged into a single conviction under R.C. 2941.25(A), the court "must first take into account the conduct of the defendant. In other words, how were the offenses committed?"  *Ruff*, *supra*, at ¶ 25.

If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses:  (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

*Id.*

**{¶30}** There is no bright-line rule governing the comparison of two offenses, and thus, the analysis may "result in varying results for the same set of offenses in different cases." *Id.* at ¶ 30, 32.  "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct."  *Id.* at ¶ 26.

Case No. 24 BE 0045

"Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import." *Id.* at ¶ 30.

**{¶31}** While a guilty plea is not a waiver of an allied offenses of similar import argument, the defendant has the burden to raise and demonstrate the necessity of merger at or before sentencing. *State v. Rogers*, 2015-Ohio-2459, ¶ 19-20. "[B]y failing to seek the merger of his convictions as allied offenses of similar import in the trial court, [the defendant] forfeit[s] his allied offenses claim for appellate review." *Id.* at ¶ 21.

**{¶32}** Furthermore, a defendant can waive the protection afforded by R.C. 2941.25. *Id.* For example, "stipulating in the plea agreement that the offenses were committed with separate animus" waives the argument. *State v. Rogers*, *supra*, at ¶ 20, quoting *State v. Underwood*, 2010-Ohio-1, ¶ 29.

**{¶33}** Waiver is the voluntary relinquishment of a known right. *Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 24. Waiver is established when it is shown that a party knows of a right but acts inconsistently with that right. *Id.* at ¶ 25.

**{¶34}** However, in *Rogers*, nothing in the record indicated that by pleading guilty, Rogers intended to relinquish the opportunity to argue he committed his offenses with the same conduct and the same animus. *State v. Rogers*, *supra*, at ¶ 20*.

**{¶35}** In contrast, Cruz in this case explicitly agreed not to argue for merger. The parties agreed to make a jointly recommended sentence of 4.5 years and neither would argue for merger. (July 30, 2024 Guilty Plea.) Both Cruz and his defense counsel subsequently acknowledged this aspect of his plea agreement on the record at the plea hearing. (July 22, 2024 Tr. 5-6.)

**{¶36}** Further, as pointed out by the trial court judge at sentencing, Cruz's agreement not to argue for merger was one of the reasons the state agreed to seek leave to dismiss counts one and two and reduce and amend count three. (August 12, 2024 Tr. 55-56.)

**{¶37}** We conclude the on-the-record agreement not to argue for merger, while not a stipulation that the offenses are not allied offenses, is a waiver. Thus, Cruz waived

his right to argue merger, and as such, the plain error doctrine is inapplicable. *See State v. Payne*, 2007-Ohio-4642, ¶ 23 (a waived right cannot be the basis for a claim of plain error under Crim.R. 52(B)); *State v. Thomas*, 2016-Ohio-5057, ¶ 15 (2d Dist.) (plea agreement need not stipulate to a separate animus to waive an allied offense argument).

**{¶38}** Furthermore, we find counts four and five are not allied offenses subject to merger. Cruz fails to demonstrate he was sentenced for allied offenses of similar import committed with the same conduct and without separate animus.

**{¶39}** As outlined by the state, Cruz contacted the victim via telephone more than 1,000 times at ten different phone numbers after the court's imposition of the no-contact order. (August 12, 2024 Sentencing Tr 17.) Further, the state pointed to the victim's testimony in which she said that during several days, Cruz made numerous promises and offers to her in an effort to influence or corrupt her testimony. This evidence established the bribery conviction. Cruz told her to tell the grand jury she wants the charges dropped, and in exchange, he promised to buy her "whatever she wanted" and told her she would never have to work again. (August 12, 2024 Sentencing Tr. 16.) In addition, the jail staff recovered several letters from Cruz directed to the victim about her testimony in violation of the no-contact order. (August 12, 2024 Sentencing Tr. 16-19.)

**{¶40}** When considering Cruz's sentence, the trial court summarized its review of his conduct, and stated in part:

> You called her hundreds upon hundreds of times. You mailed letters to her. Even when I took the unprecedented step of placing you in isolation, you were doing dead drops asking inmates to contact her. I agree with your attorney not every contact was to thwart justice in this case, but quite a few were, and it's clear that bribery occurred, and it occurred on more than one occasion. You kept going after her, not to get her to tell the truth, but to change her story; to plead, with all kind of different promises from marriage, to money, to an attorney.

(August 12, 2024 Sentencing Tr. 47.)

**{¶41}** Accordingly, the offenses were based on separate conduct occurring on varying dates, and the harm caused by each was separate and identifiable, some intended to influence her testimony while other communications violated the court's order

not to contact the victim. "[A]llied offenses are not offenses of similar import if the offender's conduct constitutes offenses against different victims or if the harm that results from each offense is separate and identifiable." *State v. Rogers*, *supra*, at ¶ 4.

{¶42} As for Cruz's claim that his counsel was ineffective for failing to raise the issue of merger before the trial court, we disagree.

{¶43} To establish a claim of ineffective assistance of counsel, a defendant must show both his trial counsel's performance was deficient, in that it fell below an objective standard of care, and the deficient performance resulted in prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 141-143 (1989), citing *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶44} Licensed attorneys in Ohio are presumed competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999). In evaluating trial counsel's performance, appellate review is highly deferential because of the strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are prohibited from second-guessing trial counsel's strategic decisions. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶45} Because we find the offenses were not subject to merger, the prejudice prong was not satisfied. Thus, we need not address the second prong or analyze whether counsel's performance fell below the standard of care or was deficient for failing to raise merger before sentencing.

{¶46} Based on the foregoing, Cruz's first four subarguments lack merit.

<u>Consecutive Sentences</u>

{¶47} Cruz's fifth and final subargument contends: "5. Whether the trial court imposition of consecutive sentences was excessive and clearly and convincingly contrary to law?"

{¶48} The imposition of consecutive prison terms for multiple felony offenses is governed by R.C. 2929.14(C)(4), which is one of the provisions listed in R.C. 2953.08(G)(2)(a). Thus, we must affirm the imposition of consecutive terms unless we clearly and convincingly find the record does not support the trial court's findings under R.C. 2929.14(C)(4), which states:

> If multiple prison terms are imposed on an offender for convictions of
> multiple offenses, the court may require the offender to serve the prison

terms consecutively if the court finds [1.] that the consecutive service is necessary to protect the public from future crime or to punish the offender [2.] and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds [3.] any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶49}** "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

**{¶50}** Here, the trial court found all the prongs were satisfied and made the requisite findings at the sentencing hearing. The court stated in part:

Defendant has continued to engage in the same criminal behavior demonstrating the likelihood of recidivism as this constitutes his third conviction for violating a protection order and the second time in his life he has been charged with domestic violence. The defendant committed these offenses while on probation or parole out of another state. The defendant shows no genuine remorse. He blames the victim for violating the protection order, and untreated alcoholism for the domestic violence.

Case No. 24 BE 0045

In accord with 2929.12(C) and (E), the Court finds no additional mitigating factors exist which suggests recidivism is less likely.

Therefore, the Court finds in accord with 2929.11(A) that the overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions the Court determines accomplishes those purposes without imposing an unnecessary burden on state or local government resources.

The Court further finds in accord with the above factors and others that consecutive prison terms are necessary in this action so as to protect the public from future crime and to punish the defendant.

Consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger he poses to the public.

(August 12, 2024 Sentencing Tr. 53-54.) The trial court also stated:

There are more lies in your letters to me and the PSI and the sentencing memorandums than there are truths. I don't know if you honestly believe the clear falsehoods that you wrote and presented to me, or you're simply incapable of telling the truth. You do hurt partners. You are incapable or outright refuse to follow the order of any Court, and you are a danger and a real threat to the community.

(August 12, 2024 Sentencing Tr. 50-51.)

**{¶51}** The court also made specific findings in its sentencing decision. The court ordered the sentences to be served consecutively and found consecutive sentences were necessary to protect the public from further crime and to punish the defendant. The court also found that consecutive sentences were not disproportionate to the seriousness of Cruz's conduct and the danger he posed to the public. (August 15, 2024 Sentencing Judgment.)

**{¶52}** In light of the foregoing, we find Cruz's final subargument lacks merit. Accordingly, his sole assigned error lacks merit in its entirety.

Case No. 24 BE 0045

### Conclusion

**{¶53}** Cruz's sole assignment of error lacks merit, and the trial court's judgment is affirmed in full.


Waite, J., concurs.

Hanni, J., concurs.

[Cite as *State v. Cruz*, **2025-Ohio-379.**]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**